ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Plaintiff,

v.

MARINE TRANSPORTATION SERVIC-
ES SEA–BARGE GROUP, INC., in per-
sonam, and the tug MR. JIM, her en-
gines, tackles, boilers, appurtenances,
etc., in rem, Defendants.

No. 88–1817–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 14, 1989.

John D. Kallen, North Miami, for plain-tiff.

Christopher R. Fertig, Fort Lauderdale, Alvaro L. Mejer, Coral Gables, for defendants.

SPELLMAN, District Judge.

THIS CAUSE comes before the Court on Defendant's, Marine Transportation Services Sea–Barge Group, Inc. (hereinafter "Sea–Barge"), Motion for Summary Judgment as to Counts II, III and IV of Plaintiff's Complaint; Plaintiff's, St. Paul Fire and Marine Insurance Company (hereinafter "St. Paul"), Cross–Motion for Summary Judgment as to Count IV of its Complaint; Sea–Barge's Motion to Strike Paragraph 6 of the Affidavit of Ann M. Montgomery; and St. Paul's Motion to Strike Sea–Barge's Supplement to Its Response to Plaintiff's Cross–Motion for Summary Judgment. For the reasons set forth below, this Court grants Sea–Barge's Motion to Strike; denies St. Paul's Motion to Strike; and grants summary judgment in favor Sea–Barge as to Counts II, III, and IV of Plaintiff's Complaint.

## SUBJECT MATTER JURISDICTION

This is an admiralty and maritime claim within the meaning of Rule 9(h), Federal Rules of Civil Procedure, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

## FACTS

Sea–Barge is a common carrier of cargo by water for hire doing business in Miami, Florida. Sea–Barge owns and operates the Defendant tug, Mr. Jim, and her tow, the barge Gulf Fleet 264. On or about December 4, 1987, the Defendants received for shipment in Miami, Florida, a 40 foot shipping container, number SCXU–464591–2, containing 459 packages of dry goods. Defendants agreed to transport and deliver said cargo to San Juan, Puerto Rico. During the course of the voyage, the cargo was

lost overboard from the barge Gulf Fleet 264, which was then in tow by the tug Mr. Jim. The cargo was never recovered. As the insurer of the subject cargo, St. Paul paid the sum of $133,205.83, representing the fair market value of the cargo (less a $500.00 deductible), and has become subrogated to the rights and interests of the true owner of the cargo, T.A.S. Container Transport, Inc. (hereinafter "T.A.S."), entitling it to bring this action.

St. Paul asserts claims for breach of contract for carriage (Count I), breach of duty owed as a bailee (Count II), negligence (Count III), and breach of an insurance policy (Count IV). As to Counts II and III, Sea–Barge asserts as an affirmative defense that St. Paul's sole remedy exists under the Carriage of Goods by Sea Act (hereinafter "COGSA"), 46 U.S.C.App. § 1300 *et seq.*, barring all other theories of liability, including theories of bailment and negligence.

As to Count IV, on which St. Paul and Sea–Barge seek summary judgment, St. Paul alleges that the ocean freight for the subject shipment which was charged to T.A.S., and fully paid, included the cost of insurance on the cargo up to $75,000.00. St. Paul further alleges that insurance was also provided under an Open Cargo Policy issued to Sea–Barge for the benefit of the shipper, T.A.S., and that the loss of the subject cargo was due to a peril and risk insured against by the Open Cargo Policy. As to Count IV, Sea–Barge asserts as affirmative defenses: that T.A.S. failed to request insurance coverage for the shipment in question and specifically rejected coverage; that T.A.S. failed to pay premiums for the insurance coverages demanded under Count IV; and that the insurance, if any, provided for in the tariff was to be "excess" insurance, that is, insurance in excess of any other collectible insurance.

St. Paul made a formal claim for payment under the insurance policies, and Sea–Barge refused to pay the sum allegedly due and owing. St. Paul seeks $133,205.83 in damages representing the fair market value of the cargo lost at sea (less a $500.00 deductible), and $75,000.00 representing the cost of insurance on the cargo together with prejudgment interest, costs, and reasonable attorneys' fees.[1]

## SEA–BARGE'S MOTION TO STRIKE PARAGRAPH 6 OF THE AFFIDAVIT OF ANN M. MONTGOMERY

Ann M. Montgomery is an office manager for T.A.S. As an office manager, Ms. Montgomery is responsible for the handling of claims submitted by various shippers of cargo which were covered under bills of lading issued by T.A.S. in its capacity as an NVOCC. In an affidavit dated January 9, 1989, Ms. Montgomery stated that she submitted a claim to Sea–Barge pursuant to a bill of lading issued by Sea–Barge, a true and correct copy of which was attached to her Affidavit as Exhibit "A."

Ms. Montgomery was deposed in Charlotte, North Carolina on June 14, 1989. Although the transcript of the deposition has not been made available to this Court, Sea–Barge's counsel states that Ms. Montgomery testified that the document previously attached as Exhibit "A" to her January 9, 1989 Affidavit, was not the bill of lading issued by Sea–Barge. According to counsel, Ms. Montgomery testified that this document was prepared by T.A.S. and forwarded to Sea–Barge.

St. Paul's counsel concedes that Ms. Montgomery did in fact testify that Exhibit "A" to her Affidavit was not issued by Sea–Barge, but was rather prepared by T.A.S. and then forwarded to Sea–Barge. However, St. Paul's counsel maintains that the basis for Sea–Barge's Motion is nothing more than mere semantics over the use of the term "issue." This Court disagrees.

St. Paul's counsel points to the deposition of Judy Dowling taken in Jacksonville, Florida on June 13, 1989. Ms. Dowling is

---

1. Pursuant to Fla.Stat. § 627.428, an insured is entitled to recover reasonable attorneys' fees upon the rendition of a judgment or court decree against an insurer and in favor of any named or omnibus insured or named beneficiary under an insurance policy executed by the insurer.

the operations manager for Sea–Barge's office in Jacksonville. While the transcript of the deposition has not been made available to this Court, St. Paul's counsel states that Ms. Dowling testified that it was customary for shippers, such as T.A.S., to prepare a set of shipping documents provided by Sea–Barge, including a bill of lading, and to then forward the completed forms to Sea–Barge in Miami. Counsel maintains that the first page of this set of shipping documents, which corresponds to Exhibit "A" to Ms. Montgomery's Affidavit, is a true and correct copy of the bill of lading prepared and issued for the subject shipment of cargo.

A plain reading of this bill of lading (Exhibit "A" to the Affidavit of Ms. Montgomery) reveals that it contains a "Shipper's Export Declaration." As counsel for both parties are well aware, a "Shipper's Export Declaration shall be prepared and signed by the shipper, owner, or consignor or his [or her] properly authorized agent." 15 C.F.R. § 30.4 (1989). Hence, Sea–Barge, being the carrier of the cargo in question, was not authorized to prepare the "Shipper's Export Declaration." Accordingly, in the absence of any evidence to the contrary, this Court finds that T.A.S. "issued" the bill of lading attached as Exhibit "A" to Ms. Montgomery's Affidavit. This fact is corroborated by Ms. Montgomery's deposition testimony that this document was not the bill of lading issued by Sea–Barge. Rather, this Court finds, as Ms. Montgomery testified, that this document was the bill of lading prepared by T.A.S. and forwarded to Sea–Barge. Accordingly, based on the above and forgoing, this Court grants Sea–Barge's Motion to Strike.

### ST. PAUL'S MOTION TO STRIKE SEA–BARGE'S SUPPLEMENT TO ITS RESPONSE TO ST. PAUL'S CROSS–MOTION FOR SUMMARY JUDGMENT

St. Paul seeks to strike from this Court's consideration a supplement filed by Sea–Barge to its Response to St. Paul's Cross–Motion for Summary Judgment, in particular, the affidavit of Sea–Barge's counsel, Alvaro L. Mejer, and the attachments thereto. The Affidavit of Mr. Mejer reflects his receipt of the attachments which explain a typographical error which had been made in the numbering of the Carrier Insurance Company Limited's Open Cargo Policy. St. Paul's Motion is predicated in part on the grounds that the attachments to the affidavit, namely, correspondence from Christopher R. Fertig, correspondence from International Marine Casualty Services Incorporated, and a copy of the Open Cargo Policy, all constitute inadmissible hearsay.

In response to St. Paul's Motion, Sea–Barge offered a telefaxed Affidavit from Del R. Jones, President of Carrier Insurance Company Limited. The Affidavit is based on personal knowledge, and explains the typographical error which had been made in the numbering of the Open Cargo Policy. Given the Affidavit of Mr. Jones, this Court need not consider Sea–Barge's Supplement to its Response to Plaintiff's Cross–Motion for Summary Judgment, nor address the evidentiary objections thereto. Accordingly, St. Paul's Motion to Strike is denied.

### STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A ruling on a summary judgment motion should be guided by the substantive evidentiary standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the non-moving party and to allow the non-moving party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637, 638 (11th Cir.1984). If there is no genuine issue of material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Trustees of Plumbers Local No. 519 Health and Welfare Trust Fund v. Garcia*, 677 F.Supp. 1554, 1556 (S.D.Fla.1988). However, because summary judgment is an extreme remedy, it should not be granted unless the moving party has established the right to judgment beyond controversy.

## UNDISPUTED FACTS

This Court finds that no genuine issue exists as to the following facts:

1. T.A.S. is a duly licensed Non–Vessel Operating Common carrier ("NVOCC").

2. As an NVOCC, T.A.S. accepted cargo from various shippers, consolidated the cargo into one forty foot container, issued its own bill of lading, agreeing to deliver said cargoes in Puerto Rico to designated consignees.

3. The cargo consisted of 459 packages of general merchandise which were loaded into container number SCXU–464591 on or around December 2, 1987, and the container was sealed with seal number 6215202.

4. At the time T.A.S. performed the above NVOCC services, it was insured against legal liability under COGSA pursuant to St. Paul's "NON–VESSEL OWNING COMMON CARRIER LEGAL LIABILITY POLICY NO. 390JM1102" (hereinafter "St. Paul's Policy").

5. St. Paul's Policy provided insurance for the goods consolidated by T.A.S. "from the time [they] are accepted by [T.A.S.] from the shipper ... until goods are delivered to the consignee at final destination...."

6. Sea–Barge received the fully loaded container with seal intact on December 4, 1987 in Miami, Florida, and loaded the container aboard their barge on the same date.

7. Sea–Barge agreed to transport the container on behalf of T.A.S. from Miami to San Juan, Puerto Rico, and issued a bill of lading on or about December 4, 1987 as evidence of this agreement.

8. The bill of lading issued by Sea–Barge contained the following pertinent provisions

THE RECEIPT, CUSTODY, CARRIAGE, DELIVERY, AND TRANS-SHIPPING OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF, AND CARRIERS TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION AND/OR THE FEDERAL MARITIME COMMISSION, WASHINGTON, D.C.

1. CLAUSE PARAMOUNT This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States approved April 16, 1936....

19. INSURANCE No insurance is included in the rates charged unless this bill of lading specifies a declared value given by the shipper for the goods. If this bill of lading specifies a declared value, carrier will provide shippers interest cargo insurance to the extent of such declared value and the limits outlined in the carrier tariff. Carrier will have no further responsibility to shipper in regard to insurance.

27.... It is also agreed that the carriage of the goods hereunder is subject to all the terms and provisions of the tariffs on file with the Federal Maritime Commission, the Interstate Commerce Commission or other regulatory body which govern the particular portions of carriage, and the terms of said tariffs are hereby incorporated herein as part of the terms and conditions of this bill of lading.

9. At the time the subject cargo was allegedly lost, Sea–Barge's tariff on file with the Interstate Commerce Commission

provided with respect to insurance as follows:

I. Except for Refrigerated or Temperature Controlled Cargoes and Privately Owned Vehicles the rates in this Tariff include insurance, subject to the limits specified in Paragraph D of Part I of this Item, purchased by the Carrier for the benefit of the Shipper and/or Owner of the goods. The policies governing this insurance are contained in an Open Cargo Policy issued to [Sea-Barge]. The policies are available to Shippers for inspection at Carrier's office. Certificates of Insurance are available upon request.

\* \* \* \* \* \*

b) *Insuring Term:*
The insurance coverage is as follows:
1) MERCHANDISE SHIPPED IS INSURED
To pay for physical loss and/or damage from any exterior cause including war risk and SR & CC but to exclude improper packing, deterioration, inherent vice, improper storage by shipper or his agent, or any other preexisting condition.

\* \* \* \* \* \*

d) LIMITS OF INSURANCE COVERAGE:
1) Unless higher limits are arranged by the carrier upon the request of the shipper and/or owner of the goods prior to shipment of the goods by the carrier, the insurance provided by SGBU, shall be subject to the following limits:
(A) SOUTH BOUND SHIPMENTS:
$75,000.00 for loss or damage to all goods shipped in a trailer ... but in no case shall the coverage provided exceed the invoice value of the cargo plus freight.

10. The Open Cargo Policy issued to Sea-Barge by Carrier Insurance Company Limited provides in pertinent part:
OTHER INSURANCE:
  34. A. Except as provided in Clause 29. B. (Carriers' Tariff Insurance):
    (1) If a specific interest insured hereinunder is covered by other insurance which attached prior to the date the specific interest attached under the

terms of this policy, then this Company shall be liable only for the amount in excess of such prior insurance and shall return to the Assured premium to be agreed after determination of the terms of the other insurance.

11. With respect to when the above insurance attaches, Clause 14 of the Open Cargo Policy provides in pertinent part:
This insurance attaches from the time goods are received by SEA-BARGE and continues during the ordinary course of transit....

12. Pursuant to the claim submitted by T.A.S., St. Paul paid the sum of $133,205.83 pursuant to the terms and conditions of St. Paul's Policy.

## COUNTS II AND III

### *Sea-Barge's Motion for Summary Judgment*

■ It is undisputed that the bill of lading issued by Sea-Barge for the subject shipment of cargo expressly provided for, and incorporated the provisions of COGSA. With regard to ports of the United States or its territories, COGSA provides:
[A]ny bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports containing an express statement that is shall be subject to the provisions of this Act, shall be subjected hereto as fully if subject hereto by the express provisions of this Act....

46 U.S.C.App. § 1312.

Courts interpreting COGSA have held that by its very language, COGSA provides an exclusive remedy, barring all other theories of liability, including theories of bailment and negligence as set forth in Count II and Count III of St. Paul's Complaint. *B.F. McKernin & Co., Inc. v. United States Lines, Inc.,* 416 F.Supp. 1068 (S.D. N.Y.1976); and *EAC Timberlane v. Pisces, Ltd.,* 745 F.2d 715 (1st Cir.1984).

Upon careful review of the record, and the affidavits and exhibits contained therein, this Court finds that no genuine issue of material fact exists whether the bill of lading issued by Sea-Barge was subject to,

and controlled by, COGSA. Additionally, this Court holds that because St. Paul's sole remedy exists under COGSA, Sea–Barge is entitled to summary judgment as to Counts II and III of St. Paul's Complaint as a matter of law.

## COUNT IV

### Sea–Barge's Motion for Summary Judgment

Sea–Barge argues that summary judgment is proper because the Carrier Insurance Company Limited's Open Cargo Policy provides for "excess" insurance above any insurance which attached prior to the time the subject cargo was received by Sea–Barge. Because the St. Paul Policy covered the cargo as of the time T.A.S. accepted them from the shipper, St. Paul had already insured the cargo at the time T.A.S. loaded the 459 packages of dry goods into the forty foot container. Consequently, Sea–Barge's Open Cargo Policy only provided for excess insurance over and above what St. Paul Covered.

### St. Paul's Response to Sea–Barge's Motion for Summary Judgment as to Counts II, III and IV and St. Paul's Cross–Motion for Summary Judgment

St. Paul maintains that neither the provisions of the tariff nor the bill of lading made any reference whatsoever to the Open Cargo Policy insurance being "excess" to any other insurance. With regards to the tariff, St. Paul states that while the insurance clauses in Sea–Barge's tariff incorporated eight separate clauses of the Open Cargo Policy, it did not specifically incorporate the "other insurance clause" of the Policy. Hence, St. Paul argues that pursuant to the terms of the tariff, Sea–Barge agreed to provide "all risk" insurance for the benefit of T.A.S.

Secondly, St. Paul maintains that as part of the ocean freight charged T.A.S. by Sea–Barge, the cost of "all risk" insurance on the cargo was included, with limits up to the sum of $75,000.00, and that the loss in question was due to a peril and a risk insured against under the "all risk" policy. Pursuant to the tariff, if the cost of insurance is included in the freight rates

charged a shipper (T.A.S.) by Sea–Barge, insurance is automatically provided without the necessity of the shipper declaring either its request for insurance or the amount thereof on the face of the bill of lading. Rather, the tariff provides that only for cargo otherwise excluded under Part I of the tariff, or where the shipper required insurance coverage in excess of the designated limits of $75,000.00, would it be necessary for the shipper to actually designate a request for insurance and the amount thereof on the bill of lading. Hence, St. Paul argues that because the cost of "all risk" insurance on the cargo was included in the ocean freight charges, "all risk" insurance up to $75,000.00 was automatically provided to T.A.S.

### Applicable Law

This cause was brought under this Court's maritime jurisdiction. When Federal maritime law is silent on a particular insurance matter, state law is followed. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In light of there being no federal decisions articulating Federal maritime policy with respect to "other insurance" clauses, this Court shall apply the law of the State of Florida.

Florida Courts recognize three principal types of "other insurance" clauses: pro-rata; excess insurance; and escape or no liability clauses. *Sentry Ins. Co. v. Aetna Ins. Co.*, 450 So.2d 1233 (Fla. 2d DCA 1984); *Auto–Owners Ins. Co. v. Palm Beach Co.*, 157 So.2d 820 (Fla. 2d DCA 1963), *cert. denied*, 165 So.2d 176 (Fla. 1964). In *Auto–Owners*, one of two insurance policies contained a provision that there would be no coverage if other valid and collectible insurance existed (an "escapee clause"). The Court was confronted with the issue of "where there are two or more insurance policies concerned, one or more which contains an 'other insurance' clause, what effect is to be given to such clause or clauses?" *Id.* at 822. In holding that full force and effect is given to "other insurance" clauses, the Court cited approvingly *Continental Cas. Co. v. Buckeye Union Cas. Co.*, 143 N.E.2d 169 (Ohio C.P. 1957) for the following proposition:

Where "double insurance" consists of policy A with no "Other Insurance" clause, and policy B with an "Other Insurance" clause, full force and effect is given to such clause.

*Id.* at 823.

## DISCUSSION

■ It is clear from the terms of Sea–Barge's tariff that insurance would be extended as per the terms and conditions of the Open Cargo Policy issued by Carrier Insurance Company Limited. It is also clear that the Open Cargo Policy insurance provided for "excess" insurance above any insurance which attached prior to the time the subject cargo was received by Sea–Barge. Accordingly, because the St. Paul Policy insurance attached prior in time to that of Carrier Insurance Company Limited's coverage, the latter is excess.

Secondly, the bill of lading adduced by Sea–Barge (Exhibit "A" to the Affidavit of William Lauderdale) states explicitly that there is "NO" insurance coverage. While the tariff provides that if the cost of insurance is included in the freight rates charged a shipper, insurance is automatically provided without the necessity of the shipper declaring either its request for insurance or the amount thereof on the face of the bill of lading, this Court holds that St. Paul's conclusory statement that "all risk" insurance was included in the freight charged T.A.S. is, as a matter of law, insufficient to defeat Sea–Barge's Motion for Summary Judgment. Accordingly, this Court finds that the cost of insuring cargo was not included as part of the ocean freight charged T.A.S. by Sea–Barge.

■ Thirdly, this Court finds that no genuine issue of material fact exists whether T.A.S. requested Sea–Barge to procure insurance for the subject cargo with limits up to the sum of $75,000.00. St. Paul has adduced a copy of a document which they purport to be the true and correct copy of the bill of lading issued by Sea–Barge (Exhibit "A" to the Affidavit of Ann M. Montgomery). However, as this Court has already found, this bill of lading was prepared by T.A.S. A plain reading of this bill of lading reveals that there is a space entitled "INSURANCE COVERAGE," but no entry stating whether insurance was to be included in the freight charged T.A.S. Accordingly, because T.A.S. prepared and forwarded this bill of lading to Sea–Barge, this Court finds that T.A.S. did not request Sea–Barge to procure insurance for the subject shipment of cargo.

Based on the above and foregoing, it is hereby

ORDERED AND ADJUDGED as follows:

1. Sea–Barge's Motion to Strike Paragraph 6 of the Affidavit of Ann M. Montgomery is GRANTED, and paragraph 6 of the Affidavit of Ann M. Montgomery is be and the same hereby STRICKEN.

2. St. Paul's Motion to Strike Sea–Barge's Supplement to Its Response to Plaintiff's Cross–Motion for Summary Judgment is DENIED.

3. Sea–Barge's Motions for Summary Judgment are GRANTED as to Counts II, III, and IV of Plaintiff's Complaint, and that St. Paul's Motion for Summary Judgment is be and the same hereby DENIED.

DONE AND ORDERED.