United States Court of Appeals,

Fifth Circuit.

No. 93-2771.

THYSSEN STEEL COMPANY, et al., Plaintiffs-Appellants,

v.

M/V KAVO YERAKAS, etc., et al., Defendants-Appellees.

April 27, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

Thyssen Steel Company and Associated Metals and Minerals Corporation (collectively Appellants) appeal from summary judgment entered in favor of Dodekaton Corporation (Appellee). We reverse in part, affirm in part and remand.

## I. FACTS

Thyssen Steel Company (Thyssen), Associated Metals and Minerals Corporation (AMMC) entered into a contract of carriage with Europe-Overseas Steamship Lines (Eurolines) to transport steel pipe from Europe to the United States aboard the vessel M/V YERAKAS which had been time chartered to Eurolines by its owner, Dodekaton Corporation (Dodekaton). The cargo was loaded pursuant to bills of lading issued and signed by Eurolines' agent "for the master."

Thyssen and AMMC contend that, upon arrival, some of the cargo was damaged, and that the damage occurred during transit.[1] Thyssen

---

[1] Although this issue is not before us, the bills of lading indicate that some of the cargo was damaged prior to loading.

and Associated sued the M/V KAVO YERAKAS *in rem,* Dodekaton and Eurolines. The district court granted Dodekaton's motion for summary judgment and entered a final "take nothing" judgment. The remaining defendants settled, and Appellants dismissed all of their claims except those against Dodekaton.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard of review as did the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548 (5th Cir.1989).

## III. IS DODEKATON A COGSA "CARRIER"?

*A. In General*

Under COGSA, a cargo owner may recover only from the *carrier* of the goods. *Pacific Employers Ins. Co. v. M/V GLORIA,* 767 F.2d 229, 234 (5th Cir.1985); *Associated Metals & Minerals Corp. v. SS PORTORIA,* 484 F.2d 460, 462 (5th Cir.1973). A "carrier" is "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C.App. § 1301(a). A "contract of carriage" is a contract of carriage covered by a bill of lading or other similar document of title. 46 U.S.C.App. § 1301(b). We have expressly held that to recover under COGSA, the cargo owner must establish that the vessel owner or charterer executed a contract of carriage

2

with the cargo owner. *See Pacific Employers,* 767 F.2d at 236-37.

A contract of carriage with the vessel owner may be either directly between the parties, or by virtue of the charterer's authority to bind the vessel owner by signing the bill of lading "for the master." *Pacific Employers,* 767 F.2d at 236. *See also In re Intercontinental Properties Management, S.A.,* 604 F.2d 254, 258 n. 3 (4th Cir.1979). However, if the charterer signs the bill of lading without the authority of the vessel owner, then the owner does not become a party to the contract of carriage and does not become liable as a "carrier" within the meaning of COGSA. *Pacific Employers,* 767 F.2d at 237; *J. Gerber & Co., Inc. v. M/V INAGUA TANIA,* 828 F.Supp. 458, 460 (S.D.Tex.1992). The cargo owner has the burden to prove that the vessel owner was a party to the contract, and its failure to do so establishes that the cargo owner did not rely on the vessel owner to perform the contract. *Associated Metals,* 484 F.2d at 462.

B. *The District Court's Holding*

The district court held that Dodekaton was not liable for the cargo damage as a COGSA carrier. Relying in particular on Clause 8 of the charter party,[2] the court found that Dodekaton did not become a party to the contract of carriage because the master was the agent of Eurolines, with no authority to issue bills of lading on behalf of Dodekaton. The court did not address the argument that the Charterer (Eurolines) had authority to sign bills of

---

[2]The full text of the relevant provisions of the instant charter party and the *Pacific Employers* and *Yeramex* charter parties are set out in the Appendix.

3

lading on behalf of Dodekaton[3] based on charter party provisions almost identical to those contained in *Pacific Employers.*

In *Pacific Employers,* we found that charter party provisions largely indistinguishable from Clauses 8 and 45 in the instant charter party authorized the charterer to sign bills of lading on behalf of the vessel owner. *Pacific Employers,* 767 F.2d at 237-38. We distinguished *Yeramex, Int'l v. S.S. TENDO,* 595 F.2d 943 (4th Cir.1979) because the *Yeramex* charter party contained an indemnification of the owner by the charterer "from all consequences arising out of Master or agents signing bills of lading in accord with charterers' instructions." *Id.*[4] Although the instant charter party contains provisions almost identical to those in *Pacific Employers,* it also contains an indemnification provision similar to that in the *Yeramex* charter party. For this reason, this case is distinguishable from *Pacific Employers,* and we address *res nova* the effect of the indemnity provision.

## C. Effect of the Indemnity Provision

A careful examination of the *Yeramex* opinion reveals that while the Fourth Circuit may have viewed the indemnity provision as

---

[3]Although copies of some of the bills of lading do not include the signature line showing that they were signed "for the master," Dodekaton concedes that Eurolines' agent signed the bills of lading "for the master."

[4]We also attempted to distinguish *Yeramex* on the basis that the charter party in *Yeramex* did not contain language which authorized the master, as agent of the owner, to permit the charterer to sign bills of lading on his behalf. However, upon re-examination of the *Yeramex* charter party, as set out in the Fourth Circuit's opinion, we have found that the charter party in fact contained authorization language virtually identical to the language we relied on in *Pacific Employers. See* Appendix.

4

evidence that the master acted as agent for the charterer vis-a-vis the cargo, the court did not interpret the provision, by itself, to relieve the vessel owner of liability to the shipper.[5]

> Under these [agency and indemnity] provisions, the owner is responsible for navigation and seaworthiness of the vessels; the charterer is responsible for all matters relating to cargo other than trim and stability and other matters affecting the vessels' seaworthiness. *As between the owner and the charterer,* MCL is solely responsible for notice of visible damage to cargo when accepted for loading by MCL or its agents at port.

*Yeramex,* 595 F.2d at 947-48 (emphasis supplied). In fact, a provision in a contract of carriage that purports to relieve a party of COGSA liability is expressly void under the Act. *See,* 46 U.S.C.App. § 1303(8).[6] Therefore, the indemnity provision has no bearing on whether Appellee is liable as a COGSA carrier.

We are left with a charter party and bill of lading that cannot be meaningfully distinguished from the charter party and bill of lading in *Pacific Employers,* and our decision is determined by the holding therein. Clause 45 of the instant charter party authorized the master to allow Eurolines' agent to sign the bills

---

[5]By its nature, an indemnity provision simply allocates loss between joint tortfeasors, and cannot relieve a culpable party of its liability vis-a-vis the injured third-party.

[6]46 U.S.C.App. § 1303(8) provides,

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section or lessening such liability otherwise and as provided in this chapter, shall be null and void and have no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability.

of lading and therefore to bind Appellee. On remand, Appellants will have the burden of proving that the master in fact granted Eurolines permission to sign on his behalf. If Appellants carry this burden, they will prove that Appellee satisfies the *Pacific Employers* framework, is in privity of contract and thereby meets the definition of a COGSA carrier. In that event, the remaining issues may prove moot. However, because we cannot presently be certain whether Appellee satisfies both prongs of the *Pacific Employers* framework, we address the remaining issues.

IV. IS PRIVITY OF CONTRACT A COGSA PREREQUISITE?

Thyssen and Associated rely on cases[7] from the Second Circuit to assert a direct claim against the vessel owner under COGSA in the absence of privity of contract. *See Siderius, Inc. v. M.V. AMILLA,* 880 F.2d 662 (2d Cir.1989) (holding that when charterer's liability to cargo owner arises because vessel was not seaworthy, vessel owner may be directly liable to cargo owner for breach of warranty of seaworthiness); *Samsung America, Inc. v. M/T FORT PRODUCER,* 798 F.Supp. 184 (S.D.N.Y.1992) (holding both charterer and vessel owner liable because they were closely related business entities with authority to act for each other); *Joo Seng Hong King*

---

[7]Thyssen and Associated also rely upon *Trade Arbed, Inc. v. S/S ELLISPONTOS,* 482 F.Supp. 991 (S.D.Tex.1980), as authority for their argument that the vessel owner may be held liable for cargo damage under COGSA in the absence of privity of contract. "*Trade Arbed* merely recognized that, for purposes of considering a motion to dismiss, it was not inconceivable that both a charterer and a vessel owner could be carriers under COGSA. But, it expressly refused to "mak[e] a determination of which parties are COGSA carriers.' " *Tuteur Associates, Inc.,* No. 93-2573, 24 F.3d 237 (5th Cir. May 18, 1994).

*Co., Ltd. v. S.S. UNIBULKFIR,* 483 F.Supp. 43, 46 (S.D.N.Y.1979) (construing term "carrier" broadly to include all charterers and owners to allow for discovery before dismissal of parties not named on bill of lading).  However, these cases are distinguishable, and are not controlling authority in this Circuit which requires privity of contract of carriage before liability under COGSA arises.

Although the district court did not directly address the argument that the "Demise" clause in the bills of lading shifted liability from the charterer to the vessel owner, the court correctly disregarded the argument as such clauses are void under COGSA.  46 U.S.C.App. § 1303(8).  *See also Amoco Transport Co. v. S/S MASON LYKES,* 768 F.2d 659, 663 n. 4 (5th Cir.1985).

## V. BAILMENT

Appellants also argue that the district court erred in holding that no bailment claim exists against the vessel owner for cargo damage.  Specifically, Thyssen and Associated contend that, even if Dodekaton is not a carrier within the meaning of COGSA, Dodekaton is liable for the cargo damage as a bailee under common law or general maritime law.  They cite *Tuscaloosa Steel Corp. v. M/V NAIMO,* 1993 AMC 622, 626-27, 1992 WL 477117 (S.D.N.Y.1992) ("[F]airness dictates that the law of bailment be an available remedy to a shipper where the owner is not bound to the contract of carriage."), and *DB-Trade Int'l, Inc. v. Astramar,* 1988 AMC 766, 767 (N.D.Ill.1987) (defendant's "non-liability as a "carrier' under COGSA does not negate these other common law theories of

7

liability"). *Id.*[8]

COGSA applies to all bills of lading or similar documents that evidence contracts of carriage of goods by sea in foreign trade to and from United States ports. 46 U.S.C.App. § 1300. The "carriage of goods" is defined as covering "the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C.App. § 1301(e). Thus, COGSA does not apply to the period prior to loading or after delivery of the goods. Indeed, COGSA expressly provides that it does not preempt any other law applicable to "the duties, responsibilities and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship." 46 U.S.C.App. § 1311. General maritime law applies to the period prior to loading and after delivery of the goods, absent an agreement to the contrary. *See Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc.,* 562 F.2d 938, 940 and n. 3 (5th Cir.1977). General maritime law also applies to parties who are not regulated by COGSA

_____

[8]Appellants also rely on *Nichimen Co. v. M/V FARLAND,* 462 F.2d 319, 325 n. 1 (2d Cir.1972), in which the court states that in addition to a claim against the charterer and owner under COGSA, the shipper established a prima facia bailment claim. However, the court did not determine whether the charterer or owner were liable under bailment law. The bailment footnote was in response to the vessel owner's and charterer's arguments that COGSA was inapplicable and that, under bailment law, they should prevail. The court was "by no means certain" that they would have done so. *Id.* at 325. Further, the court did not directly address whether COGSA provides an exclusive remedy against the charter, charterer, or vessel owner. Therefore, *Nichimen* does not support the argument made by Thyssen and Associated. *But see Tuscaloosa Steel Corp.,* 1993 AMC at 626-27 (construing *Nichimen* as allowing a bailment claim in addition to COGSA); *DB-Trade Int'l, Inc.,* 1988 AMC at 767 (same).

8

and to domestic or "coastwise" trade within the United States. *See EAC Timberlane v. Pisces, Ltd.,* 745 F.2d 715, 721 (1st Cir.1984); *Alamo Barge Lines, Inc. v. Rim Maritime Co.,* 596 F.Supp. 1026, 1034-35 (E.D.La.1984).

Some courts have held that in cases in which COGSA applies, it provides the exclusive remedy against carriers for cargo damage. *St. Paul Fire and Marine Ins. Co. v. Marine Transp. Services Sea-Barge Group, Inc.,* 727 F.Supp. 1438, 1442 (S.D.Fla.1989); *Sail America Foundation v. M/V T.S. PROSPERITY,* 778 F.Supp. 1282, 1285 (S.D.N.Y.1991). However, the district court for the Southern District of New York most recently has held that a shipper may assert a bailment claim against a vessel owner that is not bound under a contract of carriage as required by COGSA. *Tuscaloosa Steel Co.,* 1993 AMC at 626-27. Although the decisions of the Southern District of New York courts first appear to be conflicting, they are consistent to the extent that they hold that: (1) when applicable, COGSA provides the exclusive remedy for cargo damage against *carriers;* and (2) general maritime law applies when COGSA is inapplicable to a particular party or under particular circumstances.

The district court held that the bailment claim "fail[ed] because no such cause of action exists outside COGSA." Thus, the district court implicitly held that COGSA provides the exclusive remedy against the charterer and vessel owner for cargo damage occurring during foreign trade to and from United States ports.

This Court has not directly addressed that issue and we need

not reach it in this case. The district court's decision can be affirmed on the basis that a prima facie bailment claim was not established against Dodekaton. *See Bickford v. Int'l Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981) (reversal is inappropriate if ruling of district court can be affirmed on any grounds, regardless whether those grounds were used by district court).

Appellants contend that Dodekaton is liable as a bailee of the cargo for damage caused by its own negligence. Bailment is the delivery of goods or personal property to the bailee in trust, under an express or implied contract, which requires the bailee to perform the trust and either to redeliver the goods or to otherwise dispose of the goods in conformity with the purpose of the trust. *See T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585, 588 (5th Cir.), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983); *C. Itoh & Co. v. M/V HANS LEONHARDT,* 719 F.Supp. 514 516 n. 2 (D.D.La.1989). Under general admiralty law, bailment does not arise unless delivery to the bailee is complete and he has exclusive possession of the bailed property, even as against the property owner. *T.N.T. Marine Service,* 702 F.2d at 588.

Appellants have not established a prima facie bailment claim against Dodekaton. First, Thyssen and Associated did not show that an express or implied bailment contract existed. Second, Thyssen and Associated failed to establish that the cargo was within Dodekaton's exclusive possession during transit. Rather, the

10

evidence, including the bills of lading and Clause 8 of the charter party, indicates that the cargo was also within the possession of Eurolines, the charterer. Thus we affirm the district court's decision on the alternative ground that, even if such a cause of action were permissible, as a matter of law, Dodekaton is not liable as a bailee for the cargo damage under general maritime law. *See Bickford v. Int'l Speedway Corp.,* 654 F.2d at 1031.

## VI. CONCLUSION

We REVERSE the judgment of the district court and find that the language of the charter party specifically authorized the master to bind the Appellee. We AFFIRM the district court's holdings on privity of contract and bailment. We REMAND for further proceedings consistent with this opinion.

REVERSED in part, AFFIRMED in part and REMANDED.

## APPENDIX

*Comparison of Charter Party Clauses*

*CLAUSES SPECIFYING AGENCY AND EMPLOYMENT OF THE "MASTER," AND PERMITTING MASTER TO ALLOW CHARTERER TO SIGN BILLS OF LADING ON HIS BEHALF:*

*Thyssen:*

Clause 8. *The Captain* (*although appointed by the Owners*), *is solely under the orders and directions of the Charterers as regards employment and agency;* and Charterers are to load, stow, trim, lash, dunnage, secure, tally and discharge the cargo at their expense under the supervision, directions and responsibility of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts. See Clause 45.

Clause 45. If signature of Bills of Lading by the Master would occasion delay to the sailing of the vessel, *he shall authorise (sic) Charterers of their agents to sign them on his behalf* but only in conformity with Mate's and/or Tally Clerk's receipts without prejudice to this Charter Party. Charterers

11

to indemnify Owners for any discrepancies/errors/omissions.

(emphasis supplied).

*Pacific Employers,* 767 F.2d at 237:

[Rider] 8.... *The Captain (although appointed by the Owners), shall be under the orders and directions of the Charters [TMM] as regards employment and agency;* and Charterers are to load, stow, and trim and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

Rider 37. If required by Charterers and/or their Agents, *Master to authorize Charterers or their Agents to sign Bills of Lading on his behalf* in accordance with mates and/or tally clerks receipt with out prejudice to this Charter Party.

(emphasis supplied).

*Yeramex,* 595 F.2d at 947:

That the Captain [Master] shall prosecute his voyage with the utmost dispatch, and shall render all customary assistance with ship's crew and boats. *The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency;* and Charterers are to load, stow discharge, tally, lash and unlash the cargo at their expense under the supervision of the Captain, who is to sign, or if requested by the Charterers *to authorize Charterers and/or their agents to sign* Bills of Lading for cargo as presented in conformity with Mate's for Tally Clerk's receipts.

(emphasis supplied).

### B. INDEMNITY PROVISIONS:

*Thyssen:*

Clause 45. If signature of Bills of Lading by the Master would occasion delay to the sailing of the vessel, he shall authorise (sic) Charterers of their agents to sign them on his behalf but only in conformity with Mate's and/or Tally Clerk's receipts without prejudice to this Charter Party. *Charterers to indemnify Owners for any discrepancies/errors/omissions.*

(emphasis supplied).

*Yeramex,* 595 F.2d at 947:

12

[Clause] 57.  *Charterers shall indemnify Owners from all consequences arising out of Master or agents signing Bills of Lading in accordance with Charterer's instructions, or from complying with any orders or directions of Charterers in connection therewith.*  Owners are not to be responsible for shortage, mixture, marks, number of pieces or packages, contents of containers, or damage to containers or their contents, except where occurring on board and without fault of Charterer or its agents.  Charterers' stevedores are to load and discharge under the supervision of Master, who is solely responsible for trim and stability.  Charterers to be responsible for securing all cargo within container, and for loss or damage to vessel, containers or cargo, if due to stowage or discharge in negligent fashion or contrary to terms of this Charter-Party.

(emphasis supplied).