**THYSSEN STEEL COMPANY and Associated Metals & Minerals Corporation, Plaintiffs,**

v.

**M/V KAVO YERAKAS, Her Engines, Tackle, etc.,** *In rem,* **and against Dodekaton Corporation and Europe–Overseas Steamship Lines, N.V.,** *In Personam,* **Defendants.**

Civil A. No. H–92–0009.

United States District Court, S.D. Texas, Houston Division.

Jan. 18, 1996.

William Francis O'Rourke, Kroll & Tract, Houston, TX, for plaintiffs.

James Patrick Cooney, Royston Rayzor Vickery & Williams, Houston, TX, for Dodekaton Corp.

William A. Durham, Eastham, Watson, Dale & Forney, Houston, TX, for Europe Overseas Steamship Lines NV.

## MEMORANDUM OPINION

HOYT, District Judge.

Pending before the Court again, are the cross-motions for summary judgment of the plaintiffs, Thyssen Steel Company and Associated Metals & Minerals Corporation (instrument # 38), and the defendant, Dodekaton Corporation ("Dodekaton") (instrument # 39). This case is on remand from the Fifth Circuit Court of Appeals, where that court reasoned that Thyssen has the burden of proving that Dodekaton, in fact, granted Eurolines permission to sign bills of lading on behalf of Dodekaton. The plaintiffs seek to rely upon foreign law to prove that a contractual relationship does in fact exist between Dodekaton and themselves. Because the Court finds that the plaintiffs cannot rely upon foreign law in the instant case, the Court grants Dodekaton's motion for summary judgment and denies the plaintiffs' motion.

## BACKGROUND

### Factual Background

In December 1990, the plaintiffs entered into a contract of carriage with Eurolines to transport steel pipe from Europe to the United States. The cargo was transported aboard the vessel M/V KAVO YERAKAS that had been time chartered to Eurolines by its owner, Dodekaton. It was loaded pursuant to bills of lading issued and signed in Antwerp, Belgium by Eurolines' agent "for the master". One quantity of pipe was loaded in Brake, Germany for delivery in Houston, Texas. A second quantity was loaded in Antwerp for delivery in Tampa, Florida.

### Procedural Background

On January 2, 1992, the plaintiffs filed suit against M/V YERAKAS, *in rem*, and against Dodekaton and Eurolines, *in personam*, asserting that the steel pipe was damaged at some point in transit. The suit was filed pursuant to the Court's maritime jurisdiction, specifically, the Carriage of Goods by the Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300–1315.[1] Dodekaton moved for summary judgment against the plaintiffs contending that it was not a "carrier" of cargo for purposes of the COGSA and, therefore, had no personal liability for the alleged cargo damage. The Court agreed and entered a final "take nothing" judgment against the plaintiffs. The remaining defendants had settled and the plaintiffs had dismissed all of their claims, except those against Dodekaton.

The plaintiffs appealed the granting of Dodekaton's summary judgment motion. The Fifth Circuit Court of Appeals, pointing to a specific charter party provision and opined that this Court overlooked the argument that Eurolines had contractual authority to sign bills of lading on behalf of Dodekaton.[2] *Thyssen Steel Co. v. M/V KAVO YERAKAS*, 50 F.3d 1349, 1352 (5th Cir.1995). The court then reversed in part, affirmed in part, and remanded the case in order to give the plaintiffs the opportunity to prove that Dodekaton did, in fact, give Eurolines such authority. *Id.* at 1353.

---

1. Under COGSA, a cargo owner may recover only from the carrier of the goods." *Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349, 1353 (5th Cir.1995). A "carrier" is "the owner or the charterer who enters into a contract of carriage with a shipper." *Id.* (quoting 46 U.S.C.App. § 1301(a)).

2. The Circuit Court makes this observation notwithstanding the fact that Thyssen did not make this argument to the trial court. Moreover, the contract provisions are not absolute but, instead, are conditional—requiring either a request from the Charterer, or an emergency, in which event the Master's actual permission is waived.

## SUMMARY JUDGMENT REVIEW STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if after reviewing the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the Court concludes that a reasonable fact-finder could not return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making its determination, the Court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255, 106 S.Ct. at 2513.

## DISCUSSION AND AUTHORITY

In the plaintiffs' latest summary judgment motion, they contend that Belgium law applies and creates a contractual relationship between Dodekaton and themselves. As a result, the plaintiffs argue, Dodekaton is a carrier under COGSA and can be held personally liable.

In its defense, Dodekaton intertwines two different theories: Federal Rule of Civil Procedure 44.1 and the "waiver doctrine." Dodekaton contends that Rule 44.1 requires a party intending to raise a foreign law issue to give reasonable notice of that intent. Dodekaton argues that because the plaintiffs first gave notice of their intent to rely on foreign law on remand, nearly four years after the suit was filed, they waived the right to raise this issue.

### *Rule 44.1* [3]

■ Rule 44.1 states, in pertinent part, that "a party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." FED.R.CIV.P. 44.1. The rule is not intended to be a strict time bar to parties attempting to raise a choice of law question. *See generally* Arthur R. Miller, *Federal Rule 44.1 And The "Fact" Approach To Determining Foreign Law: Death Knell For A Die-hard Doctrine,* 65 Mich.L.Rev. 613 (1967). Its purpose is to "avoid unfair surprise" during discovery or at trial. FED. R.CIV.PRO. 44.1, ADVISORY COMMITTEE NOTES ("ADVISORY NOTES"); Mark C. Dillon, *Five Tips for the Civil Practitioner in Handling Choice-of-law Issues,* 22 Westchester B.J. 15, 18 (1994).

■ The drafters of Rule 44.1 recognized that the pertinence of foreign law may not be apparent at the outset. ADVISORY NOTES. The foreign law's applicability may not become apparent until the issues have been focused or at trial. John R. Brown, *44.1 Ways To Prove Foreign Law,* 9 Mar. Law. 179, 188 (1984). Where the applicability of foreign law is not obvious at the outset, notice is sufficient if it gives the opposing party time to research the foreign rules. *Hodson v. A.H. Robins Co.,* 528 F.Supp. 809, 824 (E.D.Va.1981), *aff'd,* 715 F.2d 142 (4th Cir.1983). Factors to be considered in determining the reasonableness of notice include "[t]he stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised...." ADVISORY NOTES.

■ Following these principles, the Court is of the opinion that Rule 44.1 was not intended to bar the plaintiffs' foreign law notice in the instant case. Granted, the plaintiffs have given notice of their intent to rely on foreign law at a very late stage in the proceeding.[4] Also, the reasons proffered by the plaintiffs for their failure to give earlier

---

3. Whether a party can give notice of intent to rely on foreign law for the first time on remand is an issue of first impression. Therefore, the Court must rely heavily on Rule 44.1's advisory notes, law journals, and other persuasive authority.

4. Notice was sent to Dodekaton four months after the court of appeals remanded the case, a full three years and nine months after the original complaint was filed.

notice are somewhat suspect.[5] Nevertheless, remand presents a unique situation for determining the reasonableness of foreign law notice. On remand, the discovery process may be reopened, as in the case at bar, to satisfy the appellate court's specific mandate. As a result, there is no danger that a party opposing the use of foreign law will not have sufficient time to research the issue and, thus, be unfairly surprised. In effect, the dangers Rule 44.1 was enacted to protect against are not at issue.

Here, Dodekaton does not allege unfair surprise. It simply states that as a procedural matter the plaintiffs have waived their right to rely on foreign law. Also, Dodekaton argues that the plaintiffs waited until the eve of trial to give notice of their intent to rely on foreign law. Dodekaton does not present evidence that this notice in any way hindered its ability to present a defense, and it is not the duty of the Court to presume that such prejudice exists. After reviewing the entire record, the Court concludes that the only prejudice befalling Dodekaton is that it may not prevail if the plaintiffs are allowed to apply Belgium law. However, Rule 44.1 was not enacted to prevent a full and fair trial.

### The Waiver Doctrine

■ The waiver doctrine presents a more formidable problem for the plaintiffs. In a procedural context, the doctrine applies to appellate courts in most instances. Under this doctrine, appellate courts generally will not consider factual issues raised for the first time on appeal. *E.g., Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir.1995).

5. The plaintiffs offer the following reasons for not proffering notice sooner. First, they contend that in responding to Dodekaton's original summary judgment motion they were not required to prove their case. The plaintiffs argue that the burden rested on the movant (Dodekaton) to prove that it was entitled to summary judgment. This argument misconstrues summary judgment review standards. Although the movant bears the initial burden of proving its case, the nonmovant bears the burden of placing at least one material fact in dispute after the movant, as in the instant case, has shown the absence of any disputed material fact. *Biggins v. The Hazen*

■ The problem that the waiver doctrine creates in the present case is illustrated in *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir.1995). In *Frietsch*, the Seventh Circuit Court of Appeals held that the plaintiffs waived its right to rely on foreign law because the issue was not raised for the first time until the plaintiffs' motion for reconsideration. *Id.* The court wrote, "It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Id.*

In the case at bar, as in *Frietsch*, the plaintiffs failed to raise the foreign law issue prior to the trial court issuing a final order. As well, it did not raise the issue in a motion for reconsideration or rehearing. Therefore, the summary judgment motion merely argued that no contractual relationship existed between the plaintiffs and themselves. At that time, the plaintiffs should have given notice of its intent to rely upon Belgium law to create a contractual relationship. Instead, the plaintiffs argued that language contained in the bills of lading attempting to relieve Dodekaton of liability is proof of Dodekaton's contractual relationship with them. Further, the plaintiffs argued that privity of contract is not always a necessary prerequisite to a finding of liability against a vessel owner for damage sustained by cargo interests. The plaintiffs never, so much as, hinted at the possibility that foreign law may apply. Therefore, they waived the right to raise this issue on the eve of trial.

### Law of the Case Doctrine

Once the Court granted summary judgment, the plaintiffs' waiver of intent to rely

*Paper Co.*, 899 F.Supp. 809, 818 (D.Mass.1995); *see also Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

Second, the plaintiffs contend that they did not proffer notice sooner because the possible applicability of Belgium law did not come into focus until after the court of appeals ruled. This fact alone would not excuse the plaintiffs from Rule 44.1's requirements. The issue is not whether the applicability of foreign law only came into focus on remand. The issue is whether the plaintiffs would have been reasonably expected to raise the foreign law issue sooner.

on foreign law became the "law of the case". The Court must now determine whether the plaintiffs' waiver remains the "law of the case" after remand.

 Under the "law of the case" doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. *Knotts v. U.S.*, 893 F.2d 758, 761 (5th Cir.1990). Issues decided either explicitly or by necessary inference constitute the law of the case. *See id.* "When a case is appealed and remanded, the decision of the appellate court establishes the law of the case, which *must* be followed by the trial court on remand." 1B J. Moore, J. Lucas & T. Currier, Moore's Fed.Prac. ¶ 0.404[1] (1988) ("Moore's Fed.Prac."). These rules are "grounded on sound prudential considerations. Repose is important in the law and, consequently, there must be an end to litigation." *Kotler v. American Tobacco Co.*, 981 F.2d 7, 13 (1st Cir.1992).

 In the instant case, the court of appeals remanded the case in order to allow the plaintiffs an opportunity to address a specific point, i.e., whether the charter party gave Eurolines the authority to bind Dodekaton in this circumstance. *Thyssen*, 50 F.3d at 1352. The court did not reopen the door to all issues previously litigated. The court of appeals opined, "[The plaintiffs] will have the burden of proving [on remand] that [Dodekaton] *in fact* granted Eurolines permission to sign on [its] behalf. If [the plaintiffs] carry this burden they will prove that [Dodekaton] ... is in privity of contract and thereby meets the definition of COGSA carrier." *Id.* at 1353 (emphasis added). Put more succinctly, the court of appeals allowed the plaintiffs an *opportunity* on remand to present evidence that Dodekaton gave Eurolines' agent *actual authority* to bind it.

The court of appeals did not overrule this Court's decision in its entirety. To the contrary, it affirmed on several points, including the finding that privity of contract is a COGSA prerequisite in the *Fifth Circuit*. *Id.* at 1353. Here, the foreign law issue is raised merely to avoid the privity of contract pre-

requisite, not to establish actual authority or that a "conditional" event existed.[6]

Accordingly, the Court finds that the plaintiffs' waiver of intent to rely on foreign law remains the "law of the case" after remand. This finding is consistent with the "plain meaning" of the court of appeals' ruling. In addition, it comports with the long-standing principles of the waiver doctrine.

 As for evidence tending to show that Dodekaton gave Eurolines actual authority to bind it, the plaintiffs have yet to present any. To meet their burden, the plaintiffs contend that under Belgium law, bills of lading issued by a vessel's time charterer are deemed to be issued by the vessel owner. Thus, its the plaintiffs' contention that there is privity of contract between Dodekaton and themselves. However, the question of whether foreign law applies is a question of law, not a question of fact. *See* Fed.R.Civ.P. 44.1. The plaintiffs' contention constitutes evidence of actual authority only if accompanied by facts suggesting that Dodekaton was aware at the time the bills of lading were signed that Belgium law applied to the transaction. There are no facts on the record suggesting this. And surely, the plaintiffs would not have this Court presume that Dodekaton, a Liberian Corporation, was aware of all the nuances of Belgium law when the plaintiffs considered it only after remand and on the eve of trial. This is particularly true considering that the court of appeals placed the burden on the plaintiffs on remand. In short, the plaintiffs have failed to meet their burden.

## CONCLUSION

The plaintiffs have had numerous opportunities to proffer evidence tending to show that Dodekaton gave Eurolines authority to bind it to a contract. Notwithstanding, they have not presented any evidence of such authority. From this, the Court concludes that no such evidence exists. Therefore, Dodekaton's summary judgment motion is

**6.** See footnote 2, *infra.*

GRANTED and the plaintiffs' motion is DENIED.

It is so ORDERED.