Simmons, et al. *v.* Smith County Bank

No. 39787 November 21, 1955 83 So. 2d 441

*Bradford Dye,* Grenada; *Jackson & Ross,* Jackson, for appellants.

O. B. Triplett, Jr., Forest; O. O. Weathersby, L. D. Pittman, Raleigh, for appellee.

APPELLANTS IN REPLY.

HALL, J.

This is an appeal by Mrs. Sam J. Simmons, Sr., doing business under the name of City Lumber Company, of Grenada, Mississippi, and her general agent Fred Simmons, from a decree of the Chancery Court of Smith County in the amount of $11,281.97 in favor of Smith County Bank. There was also a decree in the same suit against S. A. Bradshaw from which no appeal has been taken.

The controversy arose out of the following facts: In the early part of 1953 City Lumber Company obtained a contract with General Services Administration, a government agency, to furnish in different quantities and at different points certain hardwood warehouse pallets. These pallets are used as platforms on which to stack various types of merchandise in naval warehouses. Those here involved were to be forty-eight inches square with legs forty-two inches in length; the platform was to be

manufactured and assembled before shipment and the legs were to be shipped without attachment and were to be attached by City Lumber Company at the warehouse where final inspection was to be made by the government inspectors.

Appellants got in touch with Bradshaw, who owned a woodworking plant at Taylorsville, Mississippi, and entered into an agreement with Bradshaw for the manufacture of 10,000 of these pallets. The agreement was made by Fred Simmons who it is conceded had full authority so to do as the general agent of and manager for appellant Mrs. Sam J. Simmons, Sr. At that time Simmons was in Taylorsville, and, before making the agreement, Bradshaw advised him that he would be compelled to have some financing if he took the contract. They went together to the office of Smith County Bank at Taylorsville and Simmons exhibited a financial statement of City Lumber Company, which he was representing. A tentative agreement was made with the cashier of the bank and later confirmed by both parties with the executive vice-president of the bank, to the effect that Bradshaw would begin the manufacture of the pallets and would ship them promptly by rail as directed by Simmons and as each car was shipped Bradshaw would make out an invoice to City Lumber Company and would assign such invoice to the bank, which would thereupon advance 80% of the amount of the invoice to Bradshaw and would send each assigned invoice to City Lumber Company. Simmons agreed that each invoice would be promptly paid upon receipt at Grenada and in no event would payment be withheld more than ten days. It was specifically understood between the bank and Simmons, and this is admitted by Simmons, that the bank would not wait until inspection was made by the government inspectors and payment made to Simmons thereon before receiving payment from Simmons of these assigned invoices. In fact, there is no dispute between the parties as to the terms of the agreement with the bank.

The first eighteen invoices, aggregating $12,144.00, were promptly paid by remittance from City Lumber Company to the bank. By this time, which covered about two weeks operation, some of the shipments had begun to arrive at the government warehouses and a large portion of the pallets did not measure up to the requirements of the specifications which were a. part of the contract between the government and Simmons and also a part of the contract between Simmons and Bradshaw. Thereupon Simmons, without notifying the bank of this fact, continued to let the bank accept assignments of the invoices over the next twenty-six days, until they aggregated the sum of $11,370.00. Neither Bradshaw nor Simmons nor anyone else ever notified the bank of the trouble encountered in connection with the inspections until more than two months after the bank had taken assignment of the last invoice. Simmons admitted that he did not want the bank to know about it. During this period he was writing letters to Bradshaw and telling him that he would promptly pay off his assignments of invoices. On February 12, 1953, Simmons wrote to Bradshaw and sent a signed copy to the bank. In that letter he was contending to Bradshaw that he was entitled to a discount of 2% on all invoices paid within ten days, and he then said "Regardless whether we take the discount or not, we expect to pay your invoices promptly as agreed." That letter was written before there had been any default by Simmons in the payment of the assigned invoices. On March 14, 1953, Simmons wrote Bradshaw "We are sending the Smith County Bank payment on 5 cars $3,375.00. This leaves us owing a balance of $11,370.00." It is quite clear from the record that Simmons never had any idea of trying to avoid his obligation to the bank until after there occurred a large number of rejections by the government inspectors which City Lumber Company was called upon to rectify.

 █ Appellants rely upon the general proposition that under their contract with Bradshaw they owed Brad-

shaw nothing on the invoices until the pallets passed inspection and the government paid for them. The general rule is that an assignee takes the subject of an assignment with no greater right than is possessed by the assignor, but simply stands in the shoes of the latter. ■ ■ However, there are exceptions to this general rule, and one of these is that the principle of equitable estoppel may, under certain circumstances, be raised in favor of an assignee of a non-negotiable chose in action to protect his right as against an equity of the debtor. 4 Am. Jur., page 306, Assignments, Section 96. See also Payne v. First National Bank of Columbus, Ohio, 291 S. W. 209 (Tex.); Foster v. Newland, 21 Wendell's Reports (N. Y.) 94; Short v. Jackson, 2 Ky. Dec. 192; L'Amoreux v. Vischer, 2 N. Y. Reports 278, 280-281; Kemp v. McPherson, 7 Harris and Johnson's Reports (Md.) 320. ■ ■ In view of the above mentioned conduct of Simmons in first paying eighteen of the assignments before there was any inspection by the government, and in view of his continuing to receive the assignments from Bradshaw to the bank and at no time advising the bank that the pallets were not measuring up to specifications, and, in fact, deliberately concealing this from the bank, and by silence lulling it into a sense of security, there comes into play the doctrine of equitable estoppel as found by the chancellor, and appellants' reliance upon the general rule as to assignments fails.

■ ■ Appellants also contend that the decree of the lower court is in violation of the statute of frauds in that it holds appellants liable upon an oral promise to pay the debt of Bradshaw to the bank. The pleadings indicate that this is an after-thought on the part of appellants. They filed an answer to the original bill and made no mention of the statute of frauds. Later they filed an amended answer and still did not plead the statute of frauds. Later they filed a second amended answer and for the first time raised it. We do not think there is any merit in the point. Appellants' promise

was not to pay any debt of Bradshaw to the bank. It was a promise to honor Bradshaw's assignment to the bank of his invoices to City Lumber Company without reference to any final inspection and payment by the government. It follows that the decree of the lower court should be affirmed, but, since the decree also deals with a foreclosure in favor of the bank as against Bradshaw, from which no appeal is taken, the cause will be remanded for such further proceedings as may be appropriate.

Affirmed and remanded.

*McGehee, C.J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.