538 So.2d 361 (1989)
BOARD OF TRUSTEES of STATE INSTITUTIONS OF HIGHER LEARNING, et al.
v.
PEOPLES BANK OF MISSISSIPPI, N.A.
No. 58100.
Supreme Court of Mississippi.
January 4, 1989.
Rehearing Denied February 22, 1989.
*362 Mike Moore, Atty. Gen. by Ed Davis Noble, Jr., Asst. Atty. Gen., Jackson, for appellants.
Donald C. Woods, Keyes, Moss, Piazza & Woods, Jackson, for appellee.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:
Peoples Bank of Mississippi initiated this action against the Board of Trustees of State Institutions of Higher Learning and/or the University of Mississippi School of Dentistry to recover on a proposed lease assigned to the bank by Southern Copier Corp.
The initial complaint in this case was filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi, on October 7, 1983. On March 1, 1985, the Circuit Court of the First Judicial District of Hinds County transferred jurisdiction of the case to the Chancery Court of the First Judicial District of Hinds County. Following this action, Peoples Bank refiled a complaint in the chancery court with affidavits and the Board of Trustees filed answers on September 10, 1985, with supporting exhibits.
Peoples Bank's second complaint alleges that it was a holder in due course of a lease between the University of Mississippi School of Dentistry and Southern Copier Corporation; therefore, Peoples Bank contends that they were not subject to the claims or defenses that the University of Mississippi may have had against Southern Copier Corporation. Consequently, Peoples Bank sought judgment for the lease payments that would have remained unpaid under the proposed lease had it not been cancelled, in addition to a reasonable attorney's fee.
The Board of Trustees argued that the proposed lease which was attempted to be assigned on August 21, 1981, was never completed or submitted to the proper state supervisory agency for approval and execution. The Board also correctly contends that no lease was completed or signed until October 21, 1981, and it was for ten months  not 60 months. The lease also provided for cancellation upon 30 days' notice, which, in the course of events, was complied with and terminated on February 22, 1982. Moreover, the Board of Trustees points out that, according to statute, Bob Norsworthy, Jr., director of business administration for the School of Dentistry, did not have the final authority to sign the proposed lease or any other lease on behalf of the University of Mississippi.
At trial, the chancellor found that Bob Norsworthy, Jr., possessed apparent authority to sign the lease. Judgment was awarded to Peoples Bank against the University of Mississippi in the amount of $70,000 plus attorney's fees of $23,331, totalling $93,331, together with interest and all costs. The Board of Trustees appeals and assigns one error. Finding merit in this assignment, we reverse and render.

STATEMENT OF THE FACTS
A chronological time table reveals these events:

*363 (1) On July 22, 1981, Bob Norsworthy, Jr., director of business administration, University of Mississippi School of Dentistry, at the University Medical Center (UMC), negotiated and signed a proposed lease with Southern Copier Corporation (Southern Copier) for the lease of four Minolta copiers and accessories for the School of Dentistry.
(2) On July 27, 1981, following the signing of the proposed lease, Norsworthy (UMC) prepared a purchase request in accordance with the terms of the July 22, 1981, proposed lease. With the proposed lease attached to the purchase request, Norsworthy submitted these documents to the UMC purchasing department for approval and authorization.
(3) On August 21, 1981, after obtaining Norsworthy's signature on the proposed lease, Southern Copier assigned several leases, including the proposed UMC lease, to Peoples Bank as collateral for a $50,000 line of credit.
All of the above events took place prior to the approval of the proposed lease by the UMC purchasing department. The purchasing department followed a strict procedure in obtaining equipment for each department. The procedure by which UMC purchases equipment was explained by Mr. Norsworthy:
At that point, it's strictly  a purchase requisition is a request to the purchasing department and the accounting department at the Medical Center to obtain the materials or whatever that you are seeking. Once that requisition leaves my office, it then goes to the purchasing department for verification of completion of the form and then it goes to the accounting department at the Medical Center for availability of funds within that fiscal year, and Mr. Zimmerman will sign it at that point. It then goes back to the purchasing department and the purchasing department then, if it is with a company that has a State contract, then it will go  the request is submitted by way of a purchase order to the vendor.
This necessarily required a three-step procedure to obtain a valid lease, a common procedure well known to Mr. Norsworthy, as well as to Ben Walker, sales representative for Southern Copiers. Mr. Walker, by affidavit, stated:
The only purpose in having Bob Norsworthy sign this form was for me to notify Southern Copier Corporation to order the equipment. I did not view his signing the instrument as a binding contract or lease between the School of Dentistry and Southern Copier since I know the School of Dentistry could not lease the equipment without a UMC purchase order and none had been issued at the time of the signing.
Despite the fact that Southern Copier had not secured a completed binding purchase order or contract with UMC, Fred E. Meigs III, senior vice president of Peoples Bank, by letter dated August 21, 1981, advised the School of Dentistry of the assignment. A portion of that letter appears as follows:
Dear Sir:
Southern Copier Corporation has assigned your lease to our bank. This letter is to verify the terms of your lease. All lease payments will be paid to Southern Copier Corporation.
Are the terms of your lease as follows:
 Equipment leased: (2) Minolta 710 with
 Document Feed
 (2) Minolta 520 Copier
 with Document
 Feed
 Length of Lease: 60 months
 Rent Payment: $1,400.00
 Date of Lease: 7-22-81
Meigs requested the School of Dentistry to notify him if the terms of the $1400 for 60 months did not agree with the School of Dentistry's records. The School of Dentistry received Meigs' letter on August 25, 1981, and did not reply. Indeed, no completed or binding lease was in existence at that time.
The UMC purchasing department did not issue its actual purchase order until October 12, 1981, some fifty days after the attempted assignment. We point out that the purchase order was for ten-month period  not 60 months  and contained a 30-day *364 cancellation letter. Mr. Norsworthy testified:
Q: All right. What is the length of time that you requested that?
A: To run from September 1 of 1981 through June 30, 1982.
Q: Ten Months?
A: Yes, sir.
In September of 1981, the School of Dentistry accepted delivery of the copiers and began using them, keeping a record of service calls. On November 16, 1981, in a memo to Don McNamara, UMC director of purchasing, Mr. Norsworthy requested that McNamara cancel one of the Minolta copier leases due to performance problems. McNamara then wrote Southern Copier on November 18, 1981, and requested cancellation of the lease on that unit. On December 17, 1981, Norsworthy in a second memo to McNamara requested that he discontinue leasing another two copiers, again citing performance problems as the reason for the cancellation. On January 4, 1982, McNamara wrote Southern Copier and requested cancellation of the lease on those units.
On December 30, 1981, the School of Dentistry paid Southern Copier $4,378.95 under the terms of the proposed lease, and made one final payment of $969 on February 22, 1982, at which time all the copiers had been picked up by Southern Copier and the lease terminated, presumably under the 30-day cancellation clause.
By letter dated July 16, 1982, Ross Lamberson, senior vice president of Peoples Bank, notified the School of Dentistry that lease payments were to be made to the bank rather than Southern Copier  nearly a year after the assignment of the proposed lease on July 22, 1981, and some six to nine months after the termination of the lease and return of all the copiers to Southern Copier by the Board of Trustees. Mr. Lamberson enclosed a copy of the proposed lease in his letter to UMC. As a result of that letter, Norsworthy drafted a memo to Frank Zimmerman, vice chancellor of business affairs, and acknowledged that he had signed the proposed lease on July 22, 1981. On July 28, 1982, A.R. Gray, with UMC, responded to Lamberson's letter and acknowledged installation, stating that the lease was cancelled because the copiers failed to perform.
DISCUSSION
The Instrument in Controversy was not, at the Time of Assignment, a Valid Lease Agreement Because It had not been Submitted to and Approved by the Proper Authority. (The UMC purchasing order was not in place until October 12, 1981.)
The Board of Trustees argues that Bob Norsworthy, was not authorized to execute any binding agreement for the University Medical Center/Dental School. In point of fact, the Board of Trustees asserts that the lease agreement was a nullity due to the fact that the purchase order had not been authorized by the purchasing department. The official purchase order of the Medical Center was not issued to Southern Copier until October 12, 1981, and was materially different from the initial proposed lease in that the approved lease was for ten months  not 60  and provided for cancellation upon 30 days' notice.
Peoples Bank contends that Norsworthy served as director of business administration for the School of Dentistry since 1976. In that position, he dealt with vendors and negotiated leases on behalf of the School of Dentistry. Norsworthy also negotiated the proposed lease with Southern Copier on behalf of the School of Dentistry. By negotiating the lease, argues Peoples Bank, Norsworthy set into motion a series of events which induced third parties to act.
In analyzing these arguments, we turn to the most essential question: Was the lease agreement negotiated in a manner consistent with UMC's purchasing requirements? Underlying this question, however, is the more fundamental question of public and state contracting laws. In Jerry Bruner v. University of Mississippi et al., 501 So.2d 1113 (Miss. 1987), we stated:
In respect to public contracts "where a particular manner of contracting is prescribed, the manner is the measure of power and must be followed to create a *365 valid contract." Donnally on the Law of Public Contracts, 1922 Ed. § 5 p. 7.
Id. at 1115.
The "UMC Purchasing Policy and Procedure" manual contains this language:
I. AUTHORITY
Purchasing is governed by the Purchasing Laws of the State of Mississippi and the Internal Regulations of the University of Mississippi Medical Center. The Purchasing Department is vested with the sole authority to contract for the institution all materials and all services other than personnel. [emphasis added]
We recognize that the University of Mississippi Medical Center's Purchasing Department acts for the Board of Trustees and has the sole responsibility of approving all leases and contracts. This power originates from the State Commission of Budget and Accounting. See §§ 31-7-3, et seq., Miss. Code Ann. (Supp. 1986), which reads:
§ 31-7-5. Administrative rules and regulations. The commission shall prescribe rules and regulations governing the manner in which the authority and duties granted to it by law may be carried out. It shall employ suitable and competent personnel, necessary to carry out its purposes. The commission may establish a division of purchase supervision and employ a competent person as supervisor of purchases.
From this Code section it is clear that the authority to supervise the procurement activities of all state agencies, departments and institutions is vested in the State Commission of Budget and Accounting.
Under the direction of and pursuant to the rules and regulations of the Commission on Budget and Accounting, the University of Mississippi Medical Center's purchasing department has the sole responsibility of binding the Dental School or UMC to a written contract. A strict procedure is followed in obtaining a purchase order. Without any final authorization by the purchasing department and the accounting department at the University of Mississippi Medical Center, Norsworthy could not enter into a binding agreement with any outside vendor. Likewise, according to the testimony of Ben Walker, representative for Southern Copiers, he knew Norsworthy had no such authority. Furthermore, it was not Southern Copier's intention to bind the School of Dentistry to the terms of the lease agreement; on the contrary, the lease agreement was simply to assure the manufacturer that the order was "on line" so that the goods would be ready for use if and when all state leasing requirements were satisfied and signed by an authorized person.
Therefore, we hold that no binding contract was entered into on July 22, 1981, between UMC and Southern Copier. A valid contract did not exist between the two parties until October 12, 1981, when UMC released the purchase order. Furthermore, the October 12, 1981, contract was materially different from the original lease terms in that it was for ten months only and provided for cancellation upon 30 days' notice.
As to Peoples Bank's argument that Bob Norsworthy had apparent authority to execute any lease agreement, we point to our language in Bruner:
We can only remind the appellant of the legal maxim, which states that a person, dealing with an agent, must know at his peril the extent of the agent's authority to bind his principal.
Bruner, 501 So.2d at 1116.
Finally, Peoples Bank contends that the Board of Trustees has never been statutorily required to approve copier leases and enter approval on its official minutes; that the UMC purchasing policies and procedures that appellants rely on are nothing more than internal purchasing procedures of UMC. Peoples Bank suggests that the UMC purchasing policy and procedures were not prescribed by the Legislature, unlike the situation in Bruner, which was governed by § 37-101-15(f).
Although Bruner involved an employment contract, the analysis of § 37-101-15 included in this Court's opinion, is applicable here. We said:

*366 The University of Southern Mississippi is an agency of the State of Mississippi ... controlled by a legislative grant of authority to the Board of Trustees of State Institutions of Higher Learning. Miss. Code Ann. § 37-101-1 (1972).
Bruner, 501 So.2d at 1115. We point out that the University of Mississippi Medical Center is an agency of the State of Mississippi. Under § 37-101-1 the Legislature gives the Board of Trustees the power over all State Institutions of Higher Learning. Moreover, under § 37-101-15, the Board of Trustees has the authority to set up purchasing policies in order to carry out their authority as dictated by the Legislature. Section 37-101-15(d) reads in pertinent part:
For all institutions specified herein, the Board shall provide a uniform system of recording and accounting approved by the State Department of Audit. The Board shall annually prepare, or cause to be prepared, a budget for each institution of higher learning for the succeeding year... . No official, employee or agent representing any of the separate institutions shall appear before the Legislature or any committee thereof except upon the written order of the Board... .
These Code sections dictate that UMC purchasing policies are authorized by the Board of Trustees by virtue of the authority bestowed upon them by the Legislature. Therefore, the contention of Peoples Bank  that the purchasing policies of UMC are merely internal policies  ignores the explicit intent of statutes governing state agencies. Whether for a purchase or a lease, certain procedures are required by statute for letting a contract with the State of Mississippi.
Therefore, we hold that Southern Copier, at its own risk, dealt with an employee of UMC who did not possess the authority to bind UMC to a contractual obligation. Peoples Bank assumed this risk by accepting the assignment of the lease. The contract entered into by UMC's purchasing department was for a term of ten months and contained a 30-day cancellation provision. The Board of Trustees complied with these provisions and cancelled the leases in November and December of 1981 and January 1982  six to nine months prior to the time that Peoples Bank elected to call upon the Board of Trustees to send payments to the bank. Having been assigned an incomplete lease executed by an unbindable agent, the Bank possessed only an unauthorized incomplete lease. As we stated in Weeks v. Cal-Maine Foods, Inc., 522 So.2d 725 (Miss. 1987):
On numerous occasions this Court has said that in assignments of contracts between parties an assignee obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter and assignee's rights can rise no higher than assignor's. See, Indiana Lumbermen's Mutual Insurance Co. v. Curtis Mathes Mfg. Co., 456 So.2d 750 (Miss. 1984); Smith v. Copiah County, 232 Miss. 838, 100 So.2d 614 (Miss. 1958); Simmons v. Smith County Bank, 225 Miss. 384, 83 So.2d 441 (Miss. 1955); and Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So.1 (Miss. 1926)

CONCLUSION
The chancellor erred in permitting Peoples Bank to recover on an assignment based on a proposed lease that was not authorized or accepted by the Board of Trustees. Peoples Bank had no greater rights in the uncompleted/unauthorized lease than was possessed by the assignor, but simply stood in the shoes of the assignor. The lease, as finally accepted on October 12, 1981, was for ten months only and contained a 30-day cancellation provisions, which was utilized by UMC to cancel the lease and return the copiers.
Accordingly, we reverse the learned chancellor's order dated November 7, 1986, and render judgment for the Board of Trustees.
REVERSED AND RENDERED.
*367 ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, and ZUCCARO, JJ., concur.
ROBERTSON, J., not participating.