# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 9, 2009

Charles R. Fulbruge III
Clerk

No. 07-60861

NORTHROP GRUMMAN SHIP SYSTEMS INC, formerly known as Ingalls
Shipbuilding Inc

Plaintiff - Appellee-Cross-Appellant

SCRUGGS LAW FIRM, P A; RICHARD F SCRUGGS; PODHURST ORSECK,
PA

Intervenor Plaintiffs - Appellees

v.

THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA

Defendant - Appellant-Cross-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case began as a suit for contract damages initiated by Northrop
Grumman Ship Systems ("Northrop"), a shipbuilder based in Mississippi,
against the Ministry of Defense of the Republic of Venezuela ("the Republic").
Several years into the litigation, one of the Republic's attorneys, Richard F.
Scruggs ("Scruggs") of Mississippi, purported to agree to a settlement by which
the Republic would pay Northrop $70 million to resolve all claims. The district

court entered judgment based on the alleged settlement. The Republic subsequently moved to vacate this judgment, arguing that (1) it had not approved the settlement and (2) Scruggs did not have authority to enter a binding agreement absent such approval. The district court denied the motion to vacate and ordered enforcement of the settlement. Venezuela now appeals. For the following reasons, we reverse and remand.

## I

In 1997, Northrop entered into a contract with the Republic ("the Agreement") to overhaul and retrofit two frigates of the Republic's navy. The work was to be performed in Pascagoula, Mississippi. The Agreement provided that any disputes in connection with the contract would be submitted to arbitration in Caracas, Venezuela ("the arbitration-forum clause") and that unresolved disputes thereafter would be "resolved by the competent Courts of Venezuela" ("the litigation-forum clause").

As work on the ships proceeded between 2000 and 2002, disputes arose over cost overruns and other issues. In October 2002, Northrop filed a complaint against the Republic in federal district court in Mississippi. Northrop asserted claims for injunctive relief and "at least $200 million" in damages based on the Republic's failure to pay for extra work, and alleged jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA").[1] The Republic failed to appear or respond to the complaint,[2] and a default was entered.

---

[1] The FSIA provides jurisdiction over foreign sovereigns who engage in commercial activities in the United States. *See* 28 U.S.C. § 1605(a)(2). The Republic does not dispute jurisdiction under the FSIA on this appeal.

[2] The Republic now moves to supplement the appellate record with a copy of a letter—allegedly written by a Venezuelan official and sent to the district court on February 4, 2003—in which the Republic defends its failure to appear and specifically objects to the venue of Mississippi. "As a general rule, this court will not enlarge the record on appeal with evidence not before the district court." *McIntosh v. Partridge*, 540 F.3d 315, 327 (5th Cir. 2008) (internal quotations and citation omitted). The Republic has not provided sufficient justification for us to depart from this general rule. Accordingly, the Republic's motion to

2

In November 2002, Northrop moved to compel the Republic to arbitrate pursuant to the Agreement, but requested that the district court order arbitration in Mississippi instead of Caracas as required by the arbitration-forum clause. Northrop submitted evidence that arbitration in Venezuela would be unreasonable due to that nation's political unrest. In April 2003, the district court ordered arbitration in the United States, concluding that the Agreement's "forum-selection clause should not be enforced because the violently unstable political situation in Venezuela has rendered that country an unsuitable forum at this time." When the Republic failed to respond to the order, the court appointed an arbitrator on the Republic's behalf. An arbitration site was eventually selected in Mexico City, and preliminary proceedings were held in August and September 2003 without the Republic's participation.

In November 2003, the Republic retained Florida attorney Steven Marks ("Marks") of the law firm Podhurst Orseck, P.A. ("the Podhurst firm"), Mississippi attorney Scruggs, and Venezuelan attorney Aquiles Mendez ("Mendez"). The Attorney General of Venezuela executed a written power-of-attorney authorizing Marks and Scruggs to "carry out any and all legal actions necessary for the best defense of the rights and interests of the Republic" in the Mississippi litigation. In January 2004, the Republic appeared in the district court through Scruggs. The Republic moved (1) to dismiss the case for lack of personal and subject matter jurisdiction and (2) to vacate the 2003 order compelling arbitration outside of Venezuela because it conflicted with the Agreement's arbitration-forum clause. In March 2005, the district entered an order staying the ongoing Mexico City arbitration,[3] and the parties voluntarily

---

supplement the record is DENIED.

[3] In December 2008, as this appeal was pending, the Mexico City arbitration was terminated without decision by the arbitration panel. The panel explained that since the district court stayed proceedings in March 2005, "[t]his arbitral proceeding has been

agreed to a mediation before a Magistrate Judge in the interim. The mediation concluded without an agreement, but the parties continued to attempt to negotiate a settlement over the subsequent months.

On September 10, 2005, Scruggs telephoned Northrop's representatives and stated that the Republic was willing to pay $70 million to settle all monetary claims. Northrop accepted Scruggs' offer on September 12. Scruggs circulated a letter confirming the agreement to his co-counsel Marks and Mendez the following day; however, there is no indication that any Venezuelan official was informed of the settlement. Northrop relayed the news of the parties' agreement to the Magistrate Judge, who, after confirming the settlement with Scruggs, entered an order dismissing the case on October 5, 2005.

Five days later, the Attorney General of Venezuela sent a letter of protest objecting to the settlement. The letter stated that Scruggs "is not authorized and has never been authorized to compromise The Republic's trial against Northrop" and that the Republic expressly rejected any purported settlement. The Republic subsequently moved to vacate the district court's order of dismissal, arguing *inter alia* that Scruggs, as an agent of the Republic, did not have actual authority to bind the Republic to a settlement. The Republic maintained that Scruggs was only given authority to *negotiate*, not to enter a specific settlement without the Republic's approval. Northrop responded with an affidavit from Scruggs stating that he had received express authority to settle

---

suspended for more than three years and eight months . . . which in fact exceeds any reasonable suspension term."

during a telephone conference.[4] Significantly, both parties initially briefed the issue of Scruggs' authority pursuant to the agency law of Mississippi.

Throughout much of 2006, resolution of the Republic's motion to vacate was delayed as Scruggs moved to withdraw as counsel and filed a complaint-in-intervention against the Republic for attorney's fees. The Republic retained new counsel in December 2006. In April 2007, the Republic filed notice pursuant to FED. R. CIV. P. 44.1 ("Rule 44.1") that it intended to rely on Venezuelan law with regard to the issue of Scruggs' authority to settle. *See* FED. R. CIV. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."). The Republic submitted English translations of several Venezuelan statutes which, according to the Republic, collectively require an attorney representing the Venezuelan government to have written authorization prior to settling a dispute. In response, Northrop argued that the notice of foreign law was untimely.

On September 24, 2007, the district court ruled on the motion to vacate. The court first declined the Republic's request to rely on the Venezuelan statutes. The court reasoned that the Republic's Rule 44.1 notice was untimely and that, regardless of any delay, Mississippi substantive law controlled under applicable choice-of-law principles. The district court then applied Mississippi agency law and determined that Scruggs possessed actual authority to bind the

---

[4] According to Scruggs, he was initially "contacted by the Podhurst firm at the request of Venezuela with the request that I seek quick resolution of the money issues" in early September 2005. He further alleges that "the specifics of said [settlement] authority were confirmed through a telephone conference which included members of the Podhurst firm, Aquiles Mendez and me." Notably, Scruggs does not allege that any member of the Venezuelan government participated in this telephone conference or directly contacted him regarding a settlement. Moreover, Podhurst attorney Marks disputes Scruggs' version of events. According to Marks, "while there may have been a misunderstanding with Mr. Scruggs concerning the discussions that he was to pursue directly . . . , I was never given authority to settle the case on solely monetary terms and do not believe that I provided such authority to Mr. Scruggs." Based on our review of the record, no individual has corroborated Scruggs' claim that he received express permission to settle the dispute.

Republic to the settlement.[5] Accordingly, the court denied the Republic's motion to vacate and ordered the enforcement of the 2005 settlement.

The Republic now appeals the enforcement of the settlement. The Republic also appeals the district court's 2003 refusal to enforce the arbitration-forum clause and requests this Court to dismiss this case outright pursuant to the Agreement's separate litigation-forum clause. Northrop cross-appeals, arguing that the district court erred in refusing to award prejudgment interest from the time of the initial settlement agreement.

## II

The Republic primarily challenges the district court's determination that the settlement was enforceable because Scruggs had actual authority[6] to bind the Republic to the agreement. Under this general heading, the Republic contends that the district court erred by (1) refusing to consider the proffered Venezuelan statutes because the Republic failed to give reasonable notice pursuant to Rule 44.1; (2) concluding that the Restatement (Second) of Conflict of Laws mandated the application of Mississippi agency law instead of Venezuelan law; and (3) finding that Scruggs possessed actual authority under an application of Mississippi agency law. We consider each alleged error in turn.

## A

The Republic first appeals the determination that it failed to provide timely notice of its intent to rely on foreign law as required by Rule 44.1. As the Second and Ninth Circuits have explained, "[b]ecause Rule 44.1 grants the

---

[5] In the alternative, the district court noted that even if the Venezuelan statutes applied, Scruggs possessed the necessary authority to bind the Republic. The court reasoned that at least two documents provided to Scruggs—including the written power-of-attorney and the initial engagement letter—satisfied the "written authorization" requirement under Venezuelan law.

[6] The parties agree that Scruggs' *apparent* authority is not sufficient to bind the Republic and is not at issue on this appeal. *See generally Dale v Colagiovanni*, 443 F.3d 425, 428–29 (5th Cir. 2006) (discussing actual and apparent authority).

district court discretion in determining 'reasonable' notice, we review the district court's application of this standard for abuse of discretion." *DP Aviation v. Smiths Indus. Aerospace & Defense Sys. Ltd.*, 268 F.3d 829, 846 (9th Cir. 2001); *accord Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 585 (2d Cir. 2005).

Rule 44.1 provides that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." FED. R. CIV. P. 44.1. The rule is intended to "avoid unfair surprise," not to "set any definite limit on the party's time for giving the notice of an issue of foreign law . . . ." Fed. R. Civ. P. 44.1, ADVISORY COMMITTEE NOTES ("ADVISORY NOTES"); *see Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 (S.D. Tex. 1996) ("The rule is not intended to be a strict time bar to parties attempting to raise a choice of law question."). When the applicability of foreign law is not obvious, notice is sufficient if it allows the opposing party time to research the foreign rules. *Thyssen Steel*, 911 F.Supp. at 266; *Hodson v. A.H. Robins Co.*, 528 F.Supp. 809, 824 (E.D. Va. 1981), *aff'd*, 715 F.2d 142 (4th Cir. 1983), *abrogated on other grounds*, *Van Cauwenberghe v. Biard*, 486 U.S. 517(1988). Some of the factors that should be considered in determining whether notice is reasonable include "[t]he stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised . . . ." *See* ADVISORY NOTES.

Here, the Republic filed its Rule 44.1 notice in April 2007—eighteen months after the Republic initially moved to set aside the settlement in September 2005. The district court concluded that this was unreasonable because "the length of time which has passed since the case was filed and the progress made to date in the case militates against the use of Venezuelan law in this case."

We conclude that the district court abused its discretion. While eighteen months is an extended delay, Rule 44.1 is intended to prevent "*unfair* surprise," not to impose any specific time limit. ADVISORY NOTES (emphasis added); *see also Thyssen Steel*, 911 F. Supp. at 266–67 (accepting notice of foreign law that was first provided "on remand, nearly four years after the suit was filed"). Here, Northrop does not allege that it was prevented from responding or otherwise prejudiced by the delayed notice; nor could it make such an argument: First, the Republic referenced the applicability of Venezuelan law as early as December 2005.[7] Second, while the Republic did not expressly state its intent to rely on Venezuelan law or file a formal Rule 44.1 motion until March/April 2007, the district court did not subsequently rule on the underlying motion until September 2007. Thus, Northrop had at least five months to respond or to note any discrepancies in the Republic's recitation of Venezuelan law. *See Thyssen Steel*, 911 F. Supp. at 266 ("[N]otice is sufficient if it gives the opposing party time to research the foreign rules.").

Moreover, the extended delay in this case is partly explained by the withdrawal of Scruggs as the Republic's counsel over the course of 2006. From the time that the Republic retained its current counsel in December 2006, only three months elapsed before the Republic expressly indicated its intent to rely on Venezuelan law in March 2007. Finally, we note that the "issue of foreign law sought to be raised" here is crucial to "the case as a whole." *See* ADVISORY NOTES. As explained in more detail below, the applicability of the Venezuelan

---

[7] In the Republic's Reply to Northrop's Opposition to the Motion to Vacate and an accompanying affidavit, the Republic stated that it intended to pursue discovery to establish that Northrop knew that Scruggs was required to have written authorization pursuant to Venezuelan law. *See Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 460–61 (2d Cir. 1985) (finding notice sufficient where party's opening papers clearly indicated the relevance of Swedish law); *accord Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1071 (10th Cir. 2007).

statutes to the issue of Scruggs' authority directly affects the enforceability of the settlement.

Accordingly, the district court abused its discretion by relying solely on the length of delay. Given the lack of prejudice to the opposing party and the importance of the issue to the case, the Republic's Rule 44.1 notice should have been accepted.[8]

## B

Next, the Republic contends that the district court erred in determining that Mississippi substantive law, not Venezuelan law, governed the issue of Scruggs' authority. We review a district court's choice-of-law determination *de novo. Cates v. Creamer*, 431 F.3d 456, 462 (5th Cir. 2005).

Because this case arises under the FSIA, we apply the choice-of-law rules of the forum state. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 85 (2d Cir. 2002) ("[I]n FSIA cases, we use the forum state's choice of law rules to resolve '*all* issues,' except jurisdictional ones."); *accord O'Bryan v. Holy See*, 556 F.3d 361, 381 n.8 (6th Cir. 2009). The state of Mississippi looks to the Restatement (Second) of Conflict of Laws on choice-of-law questions. *See Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 432–33 (Miss. 2006).

---

[8] Northrop also argues that the district court's Rule 44.1 determination should be upheld because the Republic failed to offer sufficient proof of the content of Venezuelan law. The district court never made a finding as to the sufficiency of the Republic's proof. Regardless, "[t]he content of foreign law is a question of law and is subject to de novo review." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999). A court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." FED. R. CIV. P. 44.1. Here, the Republic submitted English translations of several statutes and an affidavit from Venezuela's Attorney General explaining the content of Venezuelan law. Northrop has not alleged that the Republic's submissions are inaccurate or misrepresent Venezuelan law in any way. Accordingly, we find that the Republic offered sufficient proof of the content of Venezuelan law. *See Forzley v. AVCO Corp. Electronics Div.*, 826 F.2d 974, 979 n.7 (11th Cir. 1987) (finding that the submission of an unofficial English translation of Saudi Arabian law satisfied Rule 44.1 "[a]bsent any specific objection to the accuracy of the translation").

In applying the Restatement (Second), courts should look to the section that is most relevant to the "particular issue[]" at hand. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188, cmt. d (1971); *see also McDaniel v. Ritter*, 556 So.2d 303, 311 (Miss. 1989) ("[T]he law of a single state does not necessarily control every issue in a given case."). Here, the "particular issue" is an agent's ability to bind a principal, which is directly addressed by section 292 of the Restatement (Second). Section 292 provides:

Contractual Liability of Principal to Third Person

> (1) Whether a principal is bound by action taken on his behalf by an agent in dealing with a third person is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties and the transaction under the principles stated in § 6.
>
> (2) The principal will be held bound by the agent's action if he would so be held bound under the local law of the state where the agent dealt with the third person, provided at least that the principal had authorized the agent to act on his behalf in that state or had led the third person reasonably to believe that the agent had such authority.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 292 (1971). Northrop contends that subsection (2) authorizes the application of Mississippi agency law in this case. Under the terms of subsection (2), the Republic is bound by Scruggs' actions "if [the Republic] would so be held bound under the local law of the state where [Scruggs] dealt with [Northrop], provided at least that [the Republic] had authorized [Scruggs] to act on [its] behalf in that state." *See id.* It is undisputed that Scruggs dealt with Northrop in Mississippi, as Northrop is based in Mississippi and Scruggs was hired due to his residency in the state. It is also undisputed that the Republic authorized Scruggs to "represent, sustain, and defend [its] rights and patrimonial interests" in Mississippi. Moreover, the fact that the settlement may have exceeded the scope of Scruggs' authority does

10

not negate the applicability of subsection (2). *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 292, cmt. d (1971) ("A principal who authorizes an agent to act on his behalf in a state assumes the risk that he will be held bound under the local law of that state by action, whether authorized or unauthorized, that is taken there by the agent on his behalf."); *accord FASA Corp. v. Playmates Toys, Inc.*, 869 F.Supp. 1334, 1344–45 (N.D. Ill. 1994). Thus, Northrop is entitled to the application of Mississippi agency law under the plain terms of subsection (2).[9]

Accordingly, the district court correctly selected Mississippi agency law as controlling in the instant dispute.

## C

Finally, the Republic contends that the district court erred in finding that Scruggs had actual authority to enter the settlement under Mississippi agency law. We review a district court's legal conclusions as to the content of state law *de novo*. *See In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 454 (5th Cir. 2002). However, we review factual determinations such as the boundaries of an agent's authority for clear error. *See Hudak v. Econ. Research Analysts, Inc.*, 499 F.2d 996, 1002 (5th Cir. 1974) (applying Florida law).

Under Mississippi law, the burden of showing that an attorney does not have the authority to enter a settlement is on the party denying such authority. *See Terrain Enterprises, Inc. v. Western Cas. and Sur. Co.*, 774 F.2d 1320, 1322 (5th Cir. 1985) (applying Mississippi law). Here, the district court held that the Republic failed to meet this burden. The court reasoned that Scruggs had actual authority to enter the settlement (under either Venezuelan or Mississippi law)

---

[9] While § 292(2) is dispositive, we note that Mississippi likely has the "most significant relationship" with the issue pursuant to § 292(1), as the relevant settlement negotiations occurred within Mississippi and between Mississippi residents.

because the Republic granted Scruggs a power-of-attorney to represent its interests in the Mississippi litigation.

On appeal, the parties initially dispute the applicable rules for conveying actual authority to an agent under Mississippi law. Northrop argues that a principal may confer the authority to enter a contract orally or by implication. The Republic concedes that this is true as a general rule, but contends that due to the Republic status as a sovereign, Mississippi courts would give effect to the Venezuelan statutes requiring settlement authority to be specifically conveyed in writing. The Supreme Court of Mississippi has never addressed whether courts should give effect to a foreign sovereign's own regulations for conveying actual authority to its agents. Accordingly, as an *Erie* court, we "must forecast how the Mississippi Supreme Court would rule" on this issue "based on Mississippi case law, dicta, general rules on the issue, decisions of other states, and secondary sources." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 392 (5th Cir. 2009).

We begin with general principles: Under Mississippi law, an agent's "[a]ctual authority may be express or implied." *Migerobe, Inc. v. Certina USA, Inc.*, 924 F.2d 1330, 1336 (5th Cir. 1991) (applying Mississippi law). "It is deemed express if granted in either written or *oral* specific terms." *Id.* (emphasis added). "It is deemed implied if the authority is a necessary or incidental part of the express authority." *Id.* Mississippi courts also look to the Restatement (Third) of Agency. *E.g. General Am. Life Ins. Co. v. McCraw*, 963 So.2d 1111, 1114 (Miss. 2007). According to the Restatement (Third), "[a]ctual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." RESTATEMENT (THIRD) OF AGENCY § 3.01 (2006).

It is clear from the foregoing that the authority to enter a contract may be conveyed orally and that no formal writing is required as a general rule of Mississippi law. However, we conclude that this case presents an exception to that general rule, based on its connection to a related Mississippi doctrine: Mississippi courts have long adhered to the public-contracts doctrine, which provides that "[i]n respect to public contracts where a particular manner of contracting is prescribed, the manner is the measure of power and must be followed to create a valid contract." *Bruner v. Univ. of Southern Miss.*, 501 So.2d 1113, 1115 (Miss. 1987) (internal quotation marks omitted). In a series of cases, Mississippi courts have applied this doctrine to deny the authority of government agents who are alleged to have bound government entities to contracts. For example, in *Bd. of Trs. of State Insts. of Higher Learning v. Peoples Bank of Miss.*, the Supreme Court of Mississippi considered whether a high-level employee could bind a state university to a lease contract. 538 So.2d 361, 364–65 (Miss. 1989). Applying the public-contracts doctrine, the Court reasoned that the employee lacked authority because a state statute required the university's purchasing department to approve all lease contracts. *Id.*; *see also Bruner*, 501 So.2d at 1115 (finding that a state university's football coach lacked the authority to bind the university because a state statute required the approval of the Board of Trustees for all employment contracts).

The crux of these cases is clear: "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation . . . ." *Smith v. Federal Crop. Ins. Corp.*, 58 So.2d 95, 98 (Miss. 1952) (quoting *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). In other words, a government entity has the power to define how and

when it enters a contract, and, by extension, how and when its agents have authority to create contracts on its behalf.[10]   *See id*.

Exercising our duty under *Erie*, we predict that the Supreme Court of Mississippi would afford this same privilege to foreign sovereigns.   The same concerns that animate the public-contracts doctrine in the context of state and federal entities—such as protection of the public treasury and the inherent difficulty of monitoring a multitude of agents in a bureaucracy—apply with equal force to foreign sovereigns.   *See generally* RESTATEMENT (THIRD) OF AGENCY § 2.03, cmt. g (2006) ("[A] sovereign has the exclusive ability to prescribe what its creations and its agents may do; third parties who deal with national governments, quasi-governmental entities, states, counties, and municipalities take the risk of error regarding the agent's authority to a greater degree than do third parties dealing through agents with nongovernmental principals."). Northrop has not advanced any legitimate reason for Mississippi courts to discriminate against foreign sovereigns in particular. Accordingly, we conclude that the Supreme Court of Mississippi would give effect to Venezuelan statutes that define procedures for conveying settlement authority.

However, our inquiry is not yet finished, as the parties dispute the effect of the Venezuelan statutes on the facts at hand.   The Republic provided translations of two relevant Venezuelan authorities:

---

[10] Federal courts have consistently applied similar rules with regard to contracts entered into by agents of the federal government. *See Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998) ("[O]nly those with specific authority can bind the government contractually; even those persons may do so only to the extent that their authority permits. Moreover, a party who seeks to contract with the government bears the burden of making sure that the person who purportedly represents the government actually has that authority . . . ."); *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1081 (Fed. Cir. 1989) (explaining that "[t]he legal issue of whether [the agent] was authorized to approve the funds in question is appropriately determined by the [the government agency's] internal published procedures . . . .").

Special Decree with Force of Organic Law of the Attorney General, art. 68 ("Article 68"): "The lawyers who exercise in trials the representation of the Republic can not settle . . . or use any other alternative means for the solution of the conflict, without the *express authorization* of The Attorney General of the Republic, *with previous written instructions* from the maximum authority of the respective office." (emphasis added).

Civil Procedure Code, art. 154 ("Article 154"): "The power of attorney authorizes the empowered to carry on all the acts of the process that are not reserved exclusively by law to the party himself; but in order to agree to the demand, withdraw, compromise, . . . [or] to receive sums of money and dispose of litigation rights, express authority is required."

Northrop contends that Scruggs had actual authority to bind the Republic even if these statutes are given effect. Northrop argues (and the district court implicitly held) that the written power-of-attorney and the initial engagement letter provided to Scruggs satisfy the writing requirement of Article 68.[11] We disagree.

Under the terms of Article 68, an attorney must have "written instructions from the maximum authority" of the relevant Government office. Read in context of both statutes, this clause requires a written document that *specifically* authorizes the attorney to enter a settlement. Documents that merely evidence the attorney-client relationship, such as a written power-of-attorney, do not implicitly convey the authority to settle a dispute, as such authority must be

---

[11] Northrop also relies heavily on a letter dated September 9, 2005 from Marks to the Republic. According to Northrop's interpretation, Marks' letter confirms that Marks and Scruggs received verbal instructions to settle the dispute. However, this letter is irrelevant for purposes of Article 68 because it was composed by Scruggs' co-counsel Marks, not any member of the Venezuelan government. Moreover, the meaning of the letter is ambiguous, as it can be reasonably interpreted as merely confirming instructions to begin negotiations, not to enter a binding settlement.

"express[ly]" granted.[12] *See* Article 154. Here, neither the initial engagement letter nor the written power-of-attorney mention the power to conclude a settlement. Accordingly, Northrop has not identified any document that satisfies the writing requirement of Article 68.

In sum, the district court clearly erred in determining that Scruggs had actual authority to bind the Republic to the settlement. Even if this Court were to accept Scruggs' uncorroborated testimony that he received oral authorization over the phone from his fellow co-counsel, such authorization would be contrary to the "particular manner of contracting . . . prescribed" for government settlements under Venezuelan law. *See Bruner*, 501 So.2d at 1115. Under Mississippi agency law, the settlement is not enforceable.[13] Accordingly, the district court erred in denying the Republic's motion to vacate the settlement.

## III

The Republic also appeals the district court's 2003 order compelling the parties to arbitrate in the United States instead of Caracas, Venezuela as required under the Agreement's arbitration-forum clause. In 2002, when the Republic had yet to appear in the Mississippi litigation, Northrop moved for an order compelling arbitration in Mississippi instead of Venezuela. In April 2003, the court granted Northrop's request, concluding that the Agreement's "forum-selection clause should not be enforced because the violently unstable political situation in Venezuela has rendered that country an unsuitable forum

---

[12] We note that this approach is consistent with the boundaries of the attorney-client relationship in the United States. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 22 (2000) (explaining that "whether and on what terms to settle a claim" is a decision " reserved to the client except when the client has validly authorized the lawyer to make the *particular* decision" (emphasis added)).

[13] Because we find that the settlement should not be enforced, Northrop's cross-appeal for prejudgment interest is DISMISSED as moot.

at this time." The district court did not provide any analysis of the conditions in Venezuela or make any specific findings to facilitate our review of this decision. *See generally In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1166 (5th Cir.1987) (instructing the lower court to "set out its findings and conclusions" to facilitate the review of *forum non conveniens* orders), *aff'd in relevant part*, 883 F.2d 17 (5th Cir. 1989) (en banc). However, we need not reach the merits of the district court's ruling: As noted previously, the Mexico City arbitration that resulted from the 2003 order was terminated without decision during the pendency of this appeal. Accordingly, the district court's 2003 refusal to enforce the arbitration-forum clause—a refusal that was presumably based on the conditions in Venezuela in 2002 and 2003[14]—is now moot.

The Republic requests that this Court take a further step and order arbitration in Caracas in compliance with the Agreement. In response, Northrop contends that Venezuela remains an unsuitable forum. Northrop also suggests that the Republic has permanently waived its right to enforce the arbitration-forum clause by failing to appear in the 2002–03 litigation. We have found no authority suggesting that a party's previous failure to appear constitutes absolute waiver of contractual rights. Moreover, in disputes involving foreign sovereigns, this Court has long favored the resolution of legal issues on the merits where possible. *See MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658, 662 (5th Cir. 1996) ("[W]hen a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal argument." (quoting *Practical*

---

[14] Northrop explains that Venezuela was a particularly unreasonable forum in late 2002 and early 2003 because the nation "was embroiled in violent political turmoil" involving a "military coup" and a "violent, on-going general strike." However, the district court did not specifically refer to such conditions in its 2003 order.

*Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1552 (D.C. Cir. 1987)). Accordingly, we conclude that the parties' continued dispute over the enforceability of the arbitration-forum clause should be resolved on the merits.

Nonetheless, the record before us is insufficient to determine whether the present conditions in Venezuela render the arbitration-forum clause unenforceable. Accordingly, we remand to the district court for a proper determination of this issue. Given the conclusory nature of the 2003 order, we reiterate the following governing principles: The Supreme Court has held that courts may generally set aside forum-selection clauses where enforcement would be "unreasonable." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–11 (1972). However, in several cases culminating in *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, this Court has applied a heightened standard to *arbitration*-forum clauses in particular.[15] 817 F.2d 326, 332 (5th Cir. 1987) (holding that arbitration-forum clauses "must be enforced, even if unreasonable"). Under *Nat'l Iranian Oil*, a "forum selection clause establishing the situs of arbitration must be enforced unless it conflicts with an explicit provision of the Federal Arbitration Act." *Id.* (internal quotation marks omitted). "Under the Act, a party seeking to avoid arbitration must allege and prove that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Id.* (internal quotation marks omitted). Within this framework, the contract doctrines of impracticability or impossibility "certainly suppl[y] an adequate predicate for finding the forum

---

[15] Northrop contends that *Nat'l Iranian Oil* has been implicitly overruled by the Supreme Court's decision in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 534 (1994). While the *Vimar Seguros* Court did state that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general," the Court was not addressing the rule in *Nat'l Iranian Oil*. Because there is nothing problematic about applying a heightened standard of enforceability to a "subset of foreign forum selection clauses," *Nat'l Iranian Oil* remains good law. *See Mitsui & Co., Ltd. v. Delta Brands, Inc.*, 2005 WL 1214603, at *12 (N.D. Tex. May 20, 2005) (unpublished) (applying the *Nat'l Iranian Oil* framework after *Vimar Seguros*).

selection clause unenforceable." *Id*. However, in order to assert these defenses, the complaining party must not have had reason to know about the complained-of conditions at the time of the contract. *Id*. at 333.

Accordingly, upon remand the district court should conduct such proceedings as necessary to determine the enforceability of the arbitration-forum clause pursuant to the aforementioned legal principles.

## IV

Finally, the Republic asks this Court to dismiss this action outright based on the Agreement's separate litigation-forum clause, which provides that any controversies "that do not reach a friendly resolution shall be resolved by the competent Courts of the Republic of Venezuela." However, the Republic did not move for dismissal based on the litigation-forum clause below, and this Court generally does not consider issues raised for the first time on appeal. *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Moreover, as explained previously, the record before us is insufficient to determine the present suitability of Venezuela as a forum. The Republic's argument is more appropriately addressed on remand. *See generally Practical Concepts*, 811 F.2d at 1551–52 (remanding for a determination of the defendant-sovereign's alternative defenses).

## V

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this opinion. In addition, Northrop's cross-appeal for prejudgment interest is DISMISSED as moot, and the Republic's motion to supplement the record is DENIED.