**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000299
31-JAN-2025
08:41 AM
Dkt. 64 MO**

NO. CAAP-21-0000299

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


IN THE MATTER OF THE APPLICATION OF ALA MOANA PROPERTIES
LIMITED, to register and confirm title to land situate at,
Waikiki, City and County of Honolulu, State of Hawaii.

TAEMI MIZUFUNE in her capacity as the Personal
    Representative of the ESTATE OF TOKUJI MIZUFUNE,
    Petitioner-Appellant,v. KABUHSHIKIGAISHA JAPAN
    BUILD, also known as JAPAN BUILD,a Japan
    Corporation; THE DAI-ICHI KANGYO BANK, LIMITED, by
    merger now known as MIZUHO BANK, LTD., a Japan
    Corporation; GAP, K.K., formerly known as JAPAN
    BUILDING ASSOCIATION, K.K., a Japan Corporation;
    ASSOCIATION OF APARTMENT OWNERS OF ILIKAI MARINA
    APARTMENT BUILDING, a Hawaii non-profit
    corporation; and OWNERS OF ILIKAI APARTMENT
    BUILDING, INC., a Hawaii non-profit corporation,
    Respondents-Appellees, and DOE INDIVIDUALS or
    LEGAL ENTITIES 1-20, Respondents

APPEAL FROM THE LAND COURT OF THE STATE OF HAWAIʻI
(LAND COURT CASE NO. 1LD181003034)


MEMORANDUM OPINION
(By: Wadsworth, Presiding Judge, and McCullen and Guidry, JJ.)

        Petitioner-Appellant Taemi Mizufune, in her capacity as
the Personal Representative of the Estate of Tokuji Mizufune
(**Taemi**), appeals from the "Final Judgment on [Taemi's] First
Amended Verified Petition for Amendment of Land Court Certificate
of Title No. 294,085 and No. 1,092,643, Filed November 24, 2020
[(**Amended Petition**)]" (**Judgment**), entered in favor of Respondent-
Appellee Kabushikigaisha Japan Build, also known as Japan Build
(**Japan Build**), on April 6, 2021, by the Land Court of the State

of Hawaiʻi (**Land Court**).[1]  Taemi also challenges the Land Court's January 26, 2021 "Order Granting . . . Japan Build's Motion for Summary Judgment on [Taemi's Amended Petition]" (**MSJ Order**).  The MSJ Order granted Japan Build's motion for summary judgment (MSJ) on Taemi's claims for specific performance, promissory estoppel, and quiet title relating to two condominium units (the **Properties**) in Honolulu, which Taemi contends Japan Build agreed to convey to her father, Tokuji Mizufune (**Tokuji**), before his death, in a Memorandum of Understanding (**MOU**) dated December 20, 2004.

On appeal, Taemi contends that the Land Court erred in: (1) granting summary judgment where there were genuine issues of material fact as to whether Japan Build's board of directors properly approved the MOU; (2) granting summary judgment on the promissory estoppel claim based on the court's conclusion that the MOU was not enforceable; (3) granting summary judgment on the quiet title claim where there was a genuine issue of material fact as to ownership of the Properties.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Taemi's contentions as follows, and vacate.

## I. Background

Tokuji filed the original Verified Petition on August 21, 2018, seeking amendment of the Land Court certificates of title related to the Properties.  Following Tokuji's death, Taemi filed the Amended Petition on March 20, 2020, and was substituted for Tokuji as the petitioner by order of the Land Court on March 27, 2020.  The Amended Petition sought entry of an order transferring title to the Properties from Japan Build, a Japan corporation, to Taemi, and amending the related certificates of title.  Taemi alleged that Japan Build breached a written MOU to transfer title to the Properties to Tokuji in exchange for Tokuji's assumption of a ¥154,700,000 loan (**Loan**)

---

[1]     The Honorable Gary W.B. Chang presided.

that Japan Build had obtained from Jyonan Shinyokinko. The Amended Petition asserted claims for specific performance, promissory estoppel, and quiet title relating to the two Properties.

On November 24, 2020, Japan Build filed its MSJ, contending that Taemi's three claims all relied at least in part on the validity of the MOU, and under Japanese law, the MOU was not valid. Japan Build asserted that because the MOU involved an interested transaction by a director of a Japan corporation, the "internal affairs" doctrine required application of Japanese law. Japan Build argued Japanese law required that the MOU be approved at a validly-noticed board meeting. It submitted declarations from two individuals, Yoshiaki Yanada (**Yanada**) and Tetsuo Matsui (**Matsui**), who stated: (1) when Tokuji executed the MOU on December 20, 2004, they were both directors of Japan Build; (2) the board did not hold a meeting to approve the MOU or the matters it describes, and no notice of such a board meeting was issued; and (3) they had not known of the existence of the MOU or the matters it describes until Tokuji initiated this case. Japan Build further argued that based on Taemi's response to an interrogatory request, Taemi admitted there was no noticed board meeting approving the MOU.

On December 11, 2020, Taemi filed a memorandum in opposition to the MSJ, along with her own declaration and numerous attached exhibits. She argued that there were genuine issues of material fact as to whether Japan Build's board of directors properly approved the MOU under Japanese law. Taemi's declaration alleged, among other things: Tokuji was the Representative Director of Japan Build in 2004, and Taemi was a director of Japan Build "at all relevant times." In 1987, Japan Build purchased four condominium units located in Honolulu. To fund the purchase, Japan Build obtained the Loan from Jyonan Shinyokinko, a Japanese financial institution. On December 20, 2004, Tokuji entered into a written MOU with Japan Build in which it agreed to convey the four Hawaiʻi condominium units to Tokuji

upon Tokuji's payoff of the Loan.[2/]  Tokuji signed the MOU as a
Representative Director of Japan Build, and countersigned it in
his individual capacity.

On December 21, 2020, the Land Court heard Japan
Build's MSJ and granted summary judgment on all claims, stating:

> The court is not able to find that there is an issue
> of fact or that there is a record that the formal
> requirements of Japan law were met in order to allow
> [Tokuji] to execute and enter into an agreement on behalf of
> Japan Build which agreement would benefit [Tokuji], and the
> subject of the agreement was property that was allegedly
> owned by Japan Build, and as a result of this agreement the
> title and ownership interest in that property would end up
> with [Tokuji].
>
> So the court does not believe that the plaintiff can
> show that the memorandum of understanding met the
> requirements for self-dealing and therefore the court would
> respectfully grant the motion for summary judgment.

The Land Court subsequently entered the MSJ Order and
the Judgment.  This appeal followed.

## II. Discussion

### A.  Specific Performance Claim

Taemi's specific performance claim rests on the
enforceability of the MOU as against Japan Build.  Japan Build
contended below that the MOU is not a valid and enforceable
contract under Japanese law because the subject of the MOU was a
self-dealing transaction between Japan Build and Tokuji that was
not properly approved by Japan Build's board of directors.  More
specifically, Japan Build argued that under Japanese law, Tokuji
needed – and did not obtain – the approval of the Japan Build
board via a properly noticed and held board meeting.  Instead,
Tokuji alone signed the MOU on behalf of both parties to the
transaction, Japan Build and himself.  In granting the MSJ, the
Land Court appears to have adopted Japan Build's reasoning,
concluding there was no genuine issue of material fact that the
requirements of Japanese law for approval of a self-dealing
transaction were not met.  Taemi contends on appeal that the Land

---

[2/]     Although Japan Build allegedly promised to convey four condominium
units to Tokuji when Tokuji paid off the Loan, Taemi's claims in this case are
directed to only two of the four units.

4

Court erred in this conclusion.

The Land Court applied Japanese law in reaching its decision, and the parties appear to agree that for the MOU to be valid and enforceable, it had to meet the requirements of an interested director transaction under Japanese law. We address this threshold issue first.

The enforceability of the MOU, and thus Taemi's specific performance claim, involves the "internal affairs" of a corporation, which are the "relations inter se of the corporation, its shareholders, directors, officers or agents[.]" See Restatement (Second) of Conflict of Laws § 302, cmt. a (2010). We applied the "internal affairs doctrine" in Breeden v. Acheson, No. 28816, 2011 WL 484361, at *2 (Haw. App. Feb. 9, 2011) (SDO), noting:

> The U.S. Supreme Court has recognized the "internal affairs doctrine," which provides that "the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation." First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 621 (1983) (citations omitted); Edgar v. MITE Corp., 457 U.S. 624, 645 (1982); see also Restatement (Second) of Conflict of Laws § 309 (2010). The "internal affairs" of a corporation include "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders[.]" Edgar, 457 U.S. at 645 (citations omitted). Applying the local law of the state of incorporation "achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation." First Nat'l City Bank, 462 U.S. at 621. This result is consistent with Hawaiʻi conflict-of-law rules. See Mikelson v. United Servs. Auto. Ass'n, 107 Hawaiʻi 192, 198, 111 P.3d 601, 607 (2005) (placing primary emphasis on which state has the strongest interest in seeing its laws applied to a particular case).

Id. at *2; see Roxas v. Marcos, 89 Hawaiʻi 91, 117 n.16, 969 P.2d 1209, 1235 n.16 (1998) (concluding that it was appropriate for the circuit court to apply Philippine law where the Philippines had the greater interest in the outcome of the case).

Although the present case involves a dispute over real property in Hawaiʻi, the specific performance claim turns on the enforceability of an alleged agreement involving a transaction between Japan Build and one of its directors. Japan Build is incorporated in Japan and the MOU was executed in Japan. Japan has a significant interest in protecting Japanese corporations

5

and their shareholders by regulating corporate transactions involving interested directors. In these circumstances, we conclude that Japan has the stronger interest in applying its laws to the transaction at issue. See Mikelson, 107 Hawaiʻi at 198, 111 P.3d at 607. Accordingly, in addressing the specific performance claim, the Circuit Court did not err in applying Japanese law to this transaction.

The parties agree – as do we – that because the MOU concerned a transfer of corporate assets to a director, it involved an interested director transaction governed by Article 265, Paragraph 1 of the Commercial Code of Japan.[3] See Article 265, Shōhō (Comm. C.) 1899, as amended, art. 265, para. 1 (**Commercial Code**).[4] Article 265 provides, in pertinent part:

> **Article 265. (Transaction between a Director and the Company; Transaction Causing a Conflict of Interests)**
>
> 1. In order for a director to accept a transfer of a product or any other asset of the Company, to transfer a product or any other asset of such director to the Company, to receive a loan from the Company, or to effect any other transaction with the Company, for himself or a third party, such director shall obtain the approval of the board of directors. The same shall also apply in cases where the Company guarantees a director's obligation or effects a transaction with any person other than directors with respect to which there is a conflict of interests between the Company and any director.

Japan Build's expert witness opined, and Taemi does not dispute, that under Article 265, Paragraph 1, "Japan Build's board was required to approve any transactions between Japan build and one of its directors" and "[a]ny such transaction that Japan Build's board did not approve would be invalid under Japanese law." Thus, as a matter of Japanese law, Japan Build's board had to approve the transaction at issue in order for it to be valid.

Taemi contends that there is a genuine issue of material fact as to whether such approval occurred. She argues

---

[3] Japan Build's expert witness on Japanese law so opined.

[4] Unless otherwise noted, citations to the Commercial Code of Japan are from Commercial Code of Japan (Nishimura & Partners trans., Shojihomu Co. Ltd. 2004).

in part that "[w]hile one of the directors, . . . Matsui, testified [via declaration] that he did not approve the transaction . . ., Taemi . . . testified [via declaration] that all the directors approved including Matsui who ratified . . . ."

In the summary judgment proceedings, the parties disagreed as to the individuals who constituted Japan Build's board of directors on December 20, 2004, the date of the MOU. In her declaration, Taemi stated that on the date of the MOU, Japan Build's board consisted of herself, Tokuji, and Matsui. Japan Build's expert stated that there were no directors listed in the "official commercial registry" for the period between July 1, 2002, and May 19, 2005, and concluded, based on an "indirect method," that the directors during that period were Yanada, Matsui, Tokuji, and Taemi. On this record, a genuine issue of material fact exists as to whether Yanada was serving as one of Japan Build's directors on the date of the MOU (and any approval by Japan Build's board).

Japan Build further argued in its MSJ that Taemi "admits that there was no noticed board of directors meeting to discuss the MOU," and concluded that the MOU was therefore invalid under Article 265, Paragraph 1 of the Commercial Code. Japan Build based this claim on an interrogatory asking Taemi to "[s]tate whether you discussed or communicated with any Director, Auditor, agent . . . or any other person, prior to entering into the Memorandum of Understanding," and asking Taemi to identify the person(s) involved, date, and substance of any such communication(s). Taemi's response referenced an explanatory addendum to the MOU describing communications between Yanada and Tokuji. The response then stated: "I [(Taemi)] was in the discussion. [The MOU] was discussed and approved by Yanada, Tokuji, and Taemi . . . ."

In opposing Japan Build's MSJ, Taemi elaborated. She stated in her declaration that there was a board meeting involving herself, Tokuji, and Matsui, with non-director Yanada also in attendance, and that the directors approved the MOU at that meeting. Taemi also stated that she, Tokuji, and Matsui signed minutes of the meeting, but she did not retain a copy of

the minutes, because she thought it was an internal document, and "never believed Yanada or Matusi would claim it does not exist."

We note that Article 259-3 of Japan's Commercial Code[5] authorizes board meetings to be held without advance notice, if consented to by all directors and the corporate auditors. Taemi's declaration states that she, Tokuji, Yanada, and Matsui all met and agreed to the MOU, which could indicate consent to a meeting without notice. No party presented evidence regarding whether Japan Build had corporate auditors, and if it did have auditors, whether they consented to the holding of a board meeting without notice. On this record, a genuine issue of material fact – and, ultimately, a mixed issue of fact and law – exists as to whether the meeting described by Taemi, assuming as we must that it occurred, met the requirements for a board meeting without notice under Japanese law. Relatedly, a genuine issue of material fact – and, ultimately, a mixed issue of fact and law – exists as to whether Japan Build's board properly "approved" the MOU.

Japan Build argues that "much of" Taemi's declaration is inadmissible on grounds of lack of foundation or hearsay, and several attached exhibits are not properly authenticated. We conclude, however, that Taemi made a sufficient showing, based on admissible evidence, to create the genuine issues of material fact identified above. Notably, Japan Build does not challenge the admissibility of the MOU attached as Exhibit 6 to Taemi's declaration or her statement in paragraph 41 that she, Tokuji, and Matsui were the directors of Japan Build on the date of the MOU. Japan Build does argue that paragraph 45 of the declaration contains hearsay. Based on the record to date, however, the challenged statements by Matsui and Yanada, who are alleged to be directors of Japan Build, would appear to be "admissions" of a party opponent and therefore admissible under Hawaii Rules of Evidence Rule 803(a)(1). The Land Court did not rule otherwise.

---

[5] Article 259-3 (Omission of the Convocation Procedure for a Meeting of the Board of Directors) provides:

> When the unanimous consent of the directors and the corporate auditors has been obtained, a meeting of the board of directors may be held without a convocation procedure.

Given our conclusion that Taemi presented sufficient admissible evidence to create genuine issues of material fact regarding her specific performance claim, we need not address Japan Build's other evidentiary objections.[6/]

Accordingly, the Land Court erred in entering summary judgment in Japan Build's favor on the specific performance claim.

## B. Promissory Estoppel Claim

Taemi's alternative claim for promissory estoppel is based on the allegations that Japan Build promised Tokuji it would convey the Properties to him in order to induce him to pay off — or to have a third party payoff — the Loan, and Tokuji did so in reliance on this promise. In its MSJ, Japan Build contended that the promissory estoppel claim was based on a promise Tokuji made to himself. Japan Build argued that Tokuji had no authority to make the alleged promise on behalf of Japan Build and could not reasonably rely on his own promise to himself. The Land Court did not provide an independent rationale for granting summary judgment on the promissory estoppel claim, apparently treating it as derivative of the specific performance claim. Taemi contends that the Land Court erred in doing so.

In determining whether the Land Court erred, we must first determine, under choice of law principles, which forum's law applies. Like Taemi's specific performance claim, her promissory estoppel claim implicates the "internal affairs" of Japan Build – the alleged promise by a corporate director or other agent of Japan Build (see infra) to another director. For the reasons previously discussed, we conclude that Japan has the stronger interest in applying its laws to this alleged promise. See Mikelson, 107 Hawaiʻi at 198, 111 P.3d at 607. Thus,

---

[6/] Japan Build also notes that it argued below that Taemi's declaration should be disregarded as a "sham," but the Land Court did not adopt this argument in granting the MSJ. Japan Build does not argue on appeal that this court should base its decision on the "sham declaration doctrine." See Lales v. Wholesale Motors Co., 133 Hawaiʻi 332, 360, 328 P.3d 341, 369 (2014) ("This court has not explicitly adopted or rejected the sham affidavit doctrine . . . ."). We thus do not consider the issue.

Japanese law should apply to the promissory estoppel claim.[7]

Taemi's expert witness opined that Japanese law recognizes and would apply "the principal law of estoppel," citing the Japanese Civil Code Article 1, Paragraph 2.  Article 1 provides as follows:

> Article 1.  (Exercise of private rights)
>
> 1.    All private rights shall conform to the principles of maintaining the public welfare.
>
> 2.    The exercise of rights and performance of duties shall be carried out in accordance with the principles of good faith and trust.
>
> 3.    No abuse of rights shall be permitted.

Doing Business in Japan, App.4A-1 (Zentaro Kitagawa, ed. 2007); see also Kizuki Kuzuhara, Contracting Between a Japanese Enterprise and an American Enterprise: the Differences in the Importance of Written Documents as the Final Agreement in the United States and Japan, 3 ILSA J. Int'l & Compar. L. 57, 71 (1996).

Taemi contends, based on her expert's conclusion, that "promissory estoppel theory under Japanese law" applies to these circumstances, and there is at least a genuine issue of material fact as to whether Yanada made the alleged promise to Tokuji on behalf of Japan Build.  In opposing the MSJ, Taemi contended that: (1) the alleged promise to Tokuji was made by Yanada and Matsui on behalf of Japan Build; (2) if Yanada was a director as asserted by Japan Build, Yanada's promise was Japan Build's promise; and (3) even if Yanada was not a director, as Japan Build's majority stockholder participating in its decision-making, he was an agent of Japan Build.  In her declaration, Taemi stated that Tokuji "relied on the representation of the

---

[7]    We reject Japan Build's contention that Taemi violated Hawaiʻi Rules of Civil Procedure Rule 44.1 by failing to "give notice in writing that Japanese law applied to her promissory estoppel claim."  Tokuji gave notice of his intent to rely on Japanese law in his December 22, 2018 memorandum in opposition to Japan Build's motion to dismiss, which notice was provided before Japan Build answered the original petition.  This notice was sufficient under Rule 44.1.  See, e.g., Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of Republic of Venez., 575 F.3d 491, 496-97 (5th Cir. 2009) (construing parallel federal rule: "The rule is intended 'to avoid unfair surprise,' not to 'set any definite limit on the party's time for giving the notice of an issue of foreign law.'") (ellipsis omitted).

majority stockholder, Yanada, and director Matsui approving the transaction as set forth in the [MOU] and paid off approximately ¥154,700,000 in Japan Build's loans from Jyonan Shinyokinko."

Although it appears that Japanese law recognizes a form of promissory estoppel theory, at this stage, it is not clear what the requirements are for recovery under this theory, and the record is not sufficiently developed to determine Taemi's claim. Japan Build moved for summary judgment on the premise that Taemi could not recover based on a promise that Tokuji made to himself. On this record, however, a genuine issue of material fact exists as to whether Yanada and/or Matsui made the alleged promise to Tokuji on behalf of Japan Build. Accordingly, the Land Court erred in entering summary judgment in Japan Build's favor on the promissory estoppel claim.

## C.  Quiet Title Claim

Taemi contends that the Land Court erred in "derivatively dismiss[ing]" her quiet title claim where there was a genuine issue of material fact as to ownership of the Properties based on the evidence presented in support of her specific performance and promissory estoppel claims. She also contends that Japan Build lacks standing to oppose the quiet title claim, because Japan Build has alleged that it transferred its interest in the Properties.

Because Taemi did not raise her standing argument in the Land Court, it is waived on appeal. See Price v. AIG Hawaiʻi Ins. Co., 107 Hawaiʻi 106, 111, 111 P.3d 1, 6 (2005).

We conclude, however, that the Land Court erred in entering summary judgment in Japan Build's favor on the quiet title claim. Taemi's claim to title rests on the enforceability of the MOU or the alleged promises made by Japan Build to Tokuji. For the reasons discussed above, genuine issues of material fact exist as to Taemi's related claims for specific performance and promissory estoppel. Accordingly, summary judgment should not have been granted on the quiet title claim.

### III.  Conclusion

For the reasons discussed above, we vacate the

11

January 26, 2021 "Order Granting Respondent Kabushikigaisha Japan Build aka Japan Build's Motion for Summary Judgment on Petitioner's First Amended Verified Petition for Amendment of Land Court Certificate of Title No. 294,085 and No. 1,092,643, Filed November 24, 2020[,]" and the April 6, 2021 "Final Judgment on Petitioner's First Amended Verified Petition for Amendment of Land Court Certificate of Title No. 294,085 and No. 1,092,643, Filed November 24, 2020," entered by the Land Court of the State of Hawaiʻi.  This case is remanded to the Land Court for further proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, January 31, 2025.


On the briefs:

Junsuke Aaron Otsuka
(Otsuka & Associates)
for Petitioner-Appellant.

Christopher J. Muzzi and
Leila Rothwell Sullivan
(Tsugawa Lau & Muzzi, LLLC)
for Respondents-Appellees.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge